No. 83-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

PAT LINZ,

Plaintiff and Appellant,

-vs-

CHAMPION INTERNATIONAL CORPORATION,

Defendant and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Boone, Karlberg & Haddon; Randy J. Cox argued,
Missoula, Montana

For Respondent:

Garlington, Lohn & Robinson; Robert E. Sheridan
argued, Missoula, Montana

Submitted: December 15, 1983

Decided: January 31, 1984

Filed: JAN 31 1984

Ethel M. Harrison
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Pat Linz appeals from a judgment of the Missoula County District Court dismissing his complaint for severance pay benefits allegedly due from Champion International Corporation, respondent. We affirm.

Linz was a salaried employee of the Intermountain Division of Hoerner Waldorf Corporation from 1962 to 1977. In 1977, Hoerner Waldorf was merged with Champion International Corporation. At the time of the merger, Linz was the data processing manager for the Division. As of April 1, 1977, Champion adopted a severance pay policy for salaried employees of either corporation whose employment was terminated as a result of the merger. The pertinent part of the policy states:

> "Salaried employees of Hoerner Waldorf and other units of Champion International whose employment is terminated as a result of the merger shall be entitled to severance pay based upon length of service."

Champion offered Linz employment as manager of the Rocky Mountain Terminal Center after the merger. The salary was equal to that of his position with Hoerner Waldorf with an increase scheduled for the second quarter of 1977.

Linz felt the position offered by Champion was not of the same status as his position with Hoerner Waldorf so he refused the offer. He did not receive severance pay. However, he did remain employed by Champion for a short period of time, at double salary, to assist in the transition. He brought suit in 1979 to recover severance pay, statutory penalty and attorney fees asserting that the merger caused termination of his position and, thus, he fell under the severance pay policy.

2

The trial was conducted on February 15, 1983, and the testimony was directed at whether the two positions were similar in status and function. Linz indicated his previous position entailed computer programming, system design, analysis and implementation, user services and data processing. He also testified that this position allowed a large amount of independence and involved some responsibility and management.

Linz stated that the new position would require less system design, implementation and programming. He said that Champion officials told him that he would have to go to the company computer center in Ohio for this type of work. Linz also testified that the new position would be less autonomous and allow less creativity.

The court heard testimony from Richard Fettkether, a computer expert with twenty-five years of experience. He stated the new position would not include systems analysis, design or development. Further, he indicated that, as compared to the prior position, the new job did not offer any professional growth and demanded lesser skills and abilities.

Patricia Jeffries testified that she was employed by Hoerner Waldorf and turned down an offer from Champion to continue working. However, she received severance pay. She also stated that she refused Champion's offer because the new position did not involve large scale buying as did her job with Hoerner Waldorf.

William Nelson eventually took the job offered to Linz. Over Linz's objection, he testified that he had been involved in systems design and analysis, user services and data processing in wage, payroll, ledger accounting and accounts payable. He also said that when he took over the terminal

3

center he was responsible for management of the data processing for a certain pulp mill. This involved systems analysis, design and programming. He also indicated that he was responsible for all persons who worked at the terminal center. It should be noted that most of Nelson's testimony related to what he was doing presently, not what he was told about the position when interviewed or what the job originally involved.

The District Court found the two positions substantially equivalent, and since Linz declined to accept the latter, he did not qualify for severance pay. Receipt of severance pay is not an unqualified right, ruled the court. Rather, only those employees whose jobs were terminated as a result of the merger and who were not offered similar positions could receive severance benefits. Linz did not show the positions were dissimilar; therefore, the District Court concluded he did not qualify for severance pay. From this ruling, Linz appeals and raises three issues for our consideration.

1. Did the District Court err by concluding that the appellant's employment had not been terminated, thereby disqualifying him from severance pay?

2. Did the District Court err in admitting testimony of William Nelson, the individual who took the job that Linz refused?

3. Is appellant entitled to the statutory penalty and attorney fees associated with the recovery of wages?

Linz first argues that Champion's severance pay policy does not condition severance pay upon the lack of a comparable job offer from Champion. The merger caused termination of Linz's employment; thus, according to the policy, he

4

should receive severance pay benefits. Linz also contends that a severance pay policy establishes a unilateral contract between employer and employee on which employees have a right to rely notwithstanding any offers of employment. He relied on the contract between himself and Champion when he denied Champion's offer of employment.

Champion claims that the severance pay plan envisioned termination of employment from the successor company as a prerequisite for severance pay. Champion also contends that the subsequent modification of the employment relationship by oral agreement between Linz and Champion to work several months more to assist with the transition precludes participation in the severance pay plan.

The resolution of this issue depends upon whether, according to our interpretation of the severance pay policy, Linz's employment was terminated as a result of the merger. The policy simply provided that those whose employment is terminated as a result of the merger would receive severance pay based upon length of service. The District Court based its decision upon the fact that Linz was offered comparable employment. We find that this is not a proper basis upon which to decide the present case. Rather, the policy must be construed to determine if Linz was terminated because of the merger. We find that he was not terminated by the merger and, thus, not entitled to severance pay.

In Towne v. Towne (1945), 117 Mont. 453, 159 P.2d 352, this Court held that the word "terminate" means "to put an end to; to make to cease; to end," adopting Webster's definition. 117 Mont. at 465, 159 P.2d at 357. Black's Law Dictionary utilizes Towne as authority for its definition of the

5

word "terminate." Black's Law Dictionary at 1641 (Rev. 4th Ed. 1968).

In this case, Champion offered Linz a comparable position in his city of residence. Further, his salary was equal to that he received from his position with Hoerner Waldorf with an increase scheduled for the second quarter of 1977. From these facts and under the authority of Towne, we cannot find that Linz's employment was terminated. His position would not have come to an end nor cease. He would have continued in essentially the same capacity with Champion, at the same pay, subject, however, to Champion's programs, policies and management. Thus, Linz was not entitled to severance pay, and the District Court was correct in so holding.

Since we have found that comparability of the positions is not a proper basis for decision, the question in regard to William Nelson's testimony becomes irrelevant. Also, the issue regarding statutory penalty and attorney fees in connection with the recovery of wages becomes moot since we have held that Linz is not entitled to severance pay.

Affirmed.

_____
Chief Justice

6

We concur:

_____
_____
_____
_____
_____

Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent. The majority, saying the employment policy must be strictly construed, construe it loosely. This kind of judicial contraspeak reminded the late United States Supreme Court Justice Tom Clark of Dante's Bernice, who, saying she would never consent, consented.

The employment policy does not lend itself to any construction beyond its own words:

> "Salaried employees. . . whose employment is terminated as a result of the merger shall be entitled to severance pay based upon the length of service."

The majority read into that clear paragraph two exceptions, (1) "unless a comparable job is offered by the employer", (2) "at the same pay." Search as I may, I cannot find those terms in the employer's policy.

The employer did not construe its own policy that way. It granted severance pay to Patricia Jeffries, a purchasing clerk who turned down a job as a purchasing clerk in the merged company. Now there was strict construction.

Pat Linz, who was data processing manager for Intermountain Lumber in Missoula, was offered a job by Champion as manager of the Rocky Mountain Terminal Center in Bonner. His job with Intermountain Lumber was "terminated as a result of the merger." His right to severance pay became absolute. Gaydos v. White Motor Corporation (Mich. 1974), 220 N.W.2d 697.

We should reverse, and remand for his rightful award of attorneys fees and costs.

John C. Sheehy
_____
Justice

- 8 -