James William POPE, et al.,
Plaintiffs–Appellants,

v.

MISSISSIPPI REAL ESTATE COMMIS-
SION, et al., Defendants–Appellees.

No. 88–4301.

United States Court of Appeals,
Fifth Circuit.

May 9, 1989.

Jim Waide, Tupelo, Miss., for plaintiffs-appellants.

W. Reed Hillen, Tupelo, Miss., for Individual Private Defendants.

John L. Maxey, II, Robert E. Sanders, Jackson, Miss., for Miss. Real Estate Comm.

Elizabeth A. Odom, Aberdeen, Miss., for Joyce Murphy.

Robert D. Butters, John L. McDavid, Jackson, Miss., James H. Ray, Tupelo, Miss., for Monroe County.

John W. Crowell, Columbus, Miss., for Roberts.

Before CLARK, Chief Judge, TIMBERS * and RUBIN, Circuit Judges.

PER CURIAM:

James and Mary Pope sued several private and governmental entities claiming that the defendants had excluded them from the real estate market in Monroe County, Mississippi. They raised federal claims under the antitrust statutes and the Constitution and several state law claims. The district court, finding that the Popes had failed to establish the factual prerequisites of their federal claims, granted summary judgment in favor of the defendants and dismissed the Popes' claims with prejudice. The Popes appeal. We affirm.

## I. Factual Background

James and Mary Pope operate a real estate agency in Amory, Monroe County, Mississippi. At one time, the Popes were members of the Monroe County Board of Realtors (the board), which operates a multiple listing service (MLS) within the county. In 1981, the Popes withdrew from the board, allegedly because members of the board who disapproved of their business practices changed the board's fee schedule in a way that significantly increased the dues owed by the Popes' agency. The Popes sued the board, its members, and the National Association of Realtors, asserting a myriad of claims under the federal antitrust statutes and under state law for violation of the Mississippi antitrust statutes, interference with business relations, and defamation. The number of claims has been greatly reduced on appeal. The crux of the allegations that now remain against these private defendants is that they boycotted the Popes' agency by refusing it access to the MLS and by refusing to allow the agency to use the term "realtor" unless the Popes again became board members. The term "realtor" is a registered trade-

* Circuit Judge of the Second Circuit, sitting by designation.

mark of the National Association of Realtors.

The Popes have also sued the Mississippi Real Estate Commission and its individual members. The Commission is a state governmental agency that regulates real estate brokers. The Popes allege that the Commission violated their rights to free speech, procedural due process, and equal protection when it reprimanded them for some of their advertising practices. The Popes asserted claims under the federal and state antitrust statutes, the Due Process Clause, the Equal Protection Clause, and the first amendment of the United States Constitution, the separation of powers requirement of the Mississippi Constitution, the Mississippi Public Record Statute, and state common law governing torts for interference with business relations and defamation. On appeal, the Popes narrow their attack to the federal constitutional issues.

After the completion of discovery, all defendants moved for summary judgment. The district court, in an extensive opinion reviewing all the evidence before it, determined that the Popes had not established the factual prerequisites of their federal antitrust or constitutional claims. *Pope v. Mississippi Real Estate Comm'n*, 695 F.Supp. 253 (N.D.Miss.1988). The court also held that the Popes had not established the jurisdictional prerequisites to their antitrust claims by establishing an effect upon interstate commerce and market power. Finding no cognizable federal claims, the district court dismissed all pendent state claims. We affirm.

## II. Mary Pope's Appeal

■ The Popes' notice of appeal was styled only "James William Pope, et al." Mary Pope's name did not appear on the notice. Federal Rule of Appellate Procedure 3(c) requires in pertinent part that a notice of appeal "shall specify the party or parties taking the appeal." The Supreme Court has recently held that the failure to name a party on a notice of appeal constitutes a failure of that party to appeal. *Torres v. Oakland Scavenger Co.*, —— U.S.

——, 108 S.Ct. 2405, 2407–09, 101 L.Ed.2d 285 (1988). More specifically, the Court held that the use of the phrase "et al." fails to provide the required notice to either the opposing parties or the court. *Id.* 108 S.Ct. at 2409.

This appeal, however, is distinguishable from that in *Torres*. The plaintiffs in *Torres* "purported to proceed not only on their own behalf, but also on behalf of all persons similarly situated." *Id.* at 2407. In *Torres*, the phrase "et al.," which translates literally to "and others," could have referred to a large class of unnamed individuals, as well as, or instead of, Torres. There are only two plaintiffs in this case, James and Mary Pope. The Popes' notice of appeal named "James William Pope, et al." It also stated that "Plaintiffs do hereby appeal." "Plaintiffs" can include only James and Mary Pope, and the "et al." can mean only Mary Pope. Therefore, in the limited context of this two party action, we distinguish *Torres*.

## III. The Antitrust Causes of Action

The Popes resigned from the Monroe County Board of Realtors in January of 1981 allegedly because the board changed the fee schedule for board membership in a way that significantly and disproportionately increased the dues owed by the Popes' agency. Historically, the board assessed dues on an equal, per member agency basis. This practice, however, technically violated the board's charter. The charter required that dues be assessed according to the number of agents within an agency, so that an agency with a larger number of agents would pay a greater share of the costs of the board. When the Popes' agency grew to the point that it employed half of the county's real estate agents, the board began to enforce the charter provision. The new schedule imposed a fee on each agency, plus an additional, slightly lower fee on each agent employed. As a result, the Popes were asked to pay nearly half of the total dues collected by the board. The Pope agency still received only one vote on board affairs. The Popes re-

fused to pay the higher dues and left the board.

About the time the Popes resigned from the board, a cooperative listing service was formed by the individually-named defendants in this case. The Popes allegedly were never asked to join and in fact never participated in the cooperative listing service. This service was merged with the board in 1984 and became the MLS. The Popes were not permitted to participate in the MLS because they were not board members. The Popes were also precluded from using the term "realtor" to describe their operations because they were not members of the board or the National Association of Realtors.

■ The board's exclusion of nonmembers from the MLS or from use of the term "realtor" is examined under the rule of reason. *United States v. Realty Multi–List, Inc.*, 629 F.2d 1351, 1361–69 (5th Cir. 1980). Multiple listing services are, "above all, an effective response to the pervasive market imperfections in the real estate industry." *Id.* at 1367–68. Membership dues reasonably related to expenses and to recouping the costs of the MLS are reasonable. Because both the MLS and the use of the term "realtors" involve a sharing of the fate of board members, other membership requirements imposing minimal standards of conduct might also be needed to ensure the integrity of the system. *See id.* at 1368–69. Although such requirements can be used improperly to exclude competitors, they are not necessarily anti-competitive. If properly administered, membership requirements serve pro-competitive purposes. The board's activities, therefore, do not fall among the categories of business behavior that are "plainly anti-competitive" and lacking in "any redeeming value" so as to warrant application of the *per se* rule. *See Broadcast Music, Inc. v. Columbia Broadcasting Co.*, 441 U.S. 1, 8, 99 S.Ct. 1551, 1556, 60 L.Ed.2d 1 (1979) (citations omitted).

■ In this case, the only membership requirement that is brought under the scrutiny of the antitrust statutes is the membership fee schedule that precipitated the Popes' resignation from the board. Although the Popes assert that the board began to enforce the charter's fee schedule as a means of excluding their agency, they do not argue that any other requirement excludes them from participation on the board or the MLS. The Popes' resignation was voluntary, and they can rejoin the board if they pay their dues. The Popes assert that they were not asked to participate in the cooperative listing service, but that service was not merged with the board until 1984, three years after the Popes' resignation. The Popes' suit against the board, its members, and the National Association of Realtors does not encompass this asserted wrong in 1981. Our inquiry is limited to determining whether the present fee schedule is reasonable.

The Popes do not challenge the amount of fees the board collects. Instead, they challenge the apportionment of the fees among the board members. In *Realty Multi–List*, we stated that a MLS could not collect more dues than was reasonably necessary to run the MLS service. 629 F.2d at 1368–69. To collect more than the cost of the service creates a barrier to the admittance of any new member and is without competitive justification. *Id.* This case, however, raises a different question from that faced in *Realty Multi–List*. The Popes do not argue that the board is collecting more total fees than is reasonably necessary to run the MLS and the other essential operations of the board. They argue that under the current fee schedule if they rejoin the board they will be forced to carry the majority of the board's financial burden. If the fee schedule poses any entry barrier to the MLS, it discourages the entry of large agencies, who will pay a greater share of the costs of the MLS because they employ more real estate agents. Such a fee schedule is not a barrier, however, because it is imposed only upon the firms employing the most agents who presumably will make the greatest use of the MLS and other board services.

The facts recited by James Pope in his affidavit establish the clear reasonableness of the fee apportionment employed by the

board. At the time the Popes resigned from the board, they employed nearly half the real estate agents in Monroe County and controlled approximately half the real estate market. Under such circumstances, it is patently reasonable for the Popes to be assessed half the cost of running the MLS. One half of the listings will likely be theirs. In fact, it could well be considered an unreasonable barrier to the entry of a sole agent if that agent was required to shoulder a pro tanto share of the cost of the MLS while one firm alone reaped half the benefits. The reasonableness of the board's fee schedule presents no jury question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). The schedule is reasonable.

The Popes' related contention that their agency will be allowed only one vote on board affairs is equally unavailing. If they choose to reap the benefits of managing a number of sales agents under the umbrella of a single organization, it is reasonable for them to bear the consequences of operating as a single unit for voting purposes.

### IV. The Constitutional Claims

The Popes assert that their ability to promote their real estate agency has been unconstitutionally impeded by the Mississippi Real Estate Commission, a state governmental agency, and the regulations the Commission enforces. On several occasions, Mr. Pope and the Popes' agency have been reprimanded or cautioned by the Commission that certain of their advertising practices threatened to violate the regulations applying to real estate agents in Mississippi. The Popes argue that enforcement of these regulations and the threat of future enforcement chill constitutionally protected commercial speech. The Popes also argue that the process by which they were reprimanded by the Commission falls short of due process. They seek monetary and injunctive relief pursuant to 42 U.S.C. § 1983.

In one instance, James Pope was cautioned by the Commission for offering a free vacuum cleaner to a buyer of a home listed with the Popes' agency. The vacuum cleaner was defective, and a complaint was received by the Commission. The Commission issued a letter of reprimand to Mr. Pope concerning the defective gift, which also stated:

> The Commission does, however, wish to employ this means of cautioning you regarding the offering of rebates or gifts to persons other than your principal. Such practices are technically violations of Sections 73-35-21(j), Miss.Code of 1972, and should be avoided in the future.

The referenced code provision prohibits an agent from "paying or receiving any rebate, profit, compensation or commission from any person other than his principals...." Miss.Code Ann. § 73-35-21.

Mr. Pope was also reprimanded for publishing a brochure which contrasted his services with those of other real estate agents in Monroe County. The Commission received four sworn complaints regarding the advertisement that alleged that the comparisons were inaccurate and deceptive. In response, Mr. Pope alleged that "95 percent of the information was strictly accurate...." He does not offer to explain the qualities of the missing five percent. The Commission issued a formal complaint, conducted a hearing in which Pope was represented by counsel, and suspended Mr. Pope's license for six months. The suspension, however, was held in abeyance. The record does not show that any part of it has been enforced.

Mr. Pope was also cautioned by the Commission for drawing legal descriptions of real estate. The Commission argues that, under Mississippi law, such activity constitutes the unlicensed practice of law.

Finally, Mr. Pope was reprimanded for advertising an educational real estate course as one that had been approved by the Mississippi Real Estate Commission. The course was not so approved.

The Popes argue that these Commission enforcement activities and the threat of future enforcement prevents them from using the trademark "realtor" to describe their operations. The Commission admits that use of such a description would violate

its regulations because the Popes are not members of the board and, hence, not "realtors." No proceedings concerning the use of this term have ever been instigated against Mr. Pope or the Popes' agency.

■ Mr. Pope did not challenge any of the rulings or interpretations of the relevant regulations by the Commission. Nor did he seek clarification of those regulations that he claims chill his advertising practices. Any person aggrieved by a ruling of the Commission has an unfettered right under Mississippi law to appeal that ruling to a state court of competent jurisdiction. Miss.Code Ann. § 73–35–25(a). An order or rule of the Commission is not final until after appeal or after the time for appeal has expired. *Id.* at § 73–35–25(c). In addition to this available court review, the Popes stipulated that for "each complaint against plaintiffs received by Mississippi Real Estate Commission, Plaintiff, James W. Pope, Sr., received notice that a complaint was filed." Even assuming that the Commission's cautionary letters and the suspended sanction against Mr. Pope constitute a deprivation of a liberty or property interest, the notice and post-deprivation remedy of appeal are adequate due process to protect Mr. Pope's interests. *See Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir.1987).

■ Commercial speech receives first amendment protection only so long as it concerns a lawful activity and is not misleading. *Posadas de Puerto Rico Assoc. v. Tourism Co.*, 478 U.S. 328, 340, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986); *Central Hudson Gas and Elect. Corp. v. Public Service Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Thus, the Popes' brochure that was, in part, misleading and the advertisement for educational courses were not protected speech, and the Commission's suspended sanctions and warning were proper. Likewise unprotected is the drawing of legal descriptions, which under Mississippi law is tantamount to practicing law without a license. Miss.Code Ann. 73–3–55; *Darby v. Mississippi State Bd. of Bar Admissions*, 185 So.2d 684, 686–67 (Miss.1966).

■ The Popes also have no right to use the term "realtor" to describe their operation. "Realtor" is a registered trademark. Although the Popes assert that the term has come to mean any real estate agent in a generic sense, they produced no summary judgment proof to establish this fact other than the conclusionary allegation of Mr. Pope. This is not sufficient. *Leonard v. Dixie Well Service and Supply, Inc.*, 828 F.2d 291, 295 (5th Cir.1987). Because the Popes do not raise a fact question concerning the common meaning of the trademark "realtor," we need not reach the implications of the Lanham Act, 15 U.S.C. § 1051 et seq.

■ The prohibition against the giving of gifts requires further analysis. The reprimand issued to Mr. Pope did not damage the Popes' first amendment rights. The vacuum cleaner given as a gift was defective and thus like a deceptive advertisement does not constitute protected speech. Mr. Pope was properly reprimanded for the faulty appliance. However, if the Mississippi statute were to be construed to prohibit all gifts as advertisement by real estate agents it might chill protected speech. The Popes also argue that the prohibition against giving gifts violates substantive due process. We need not reach these constitutional questions, however, because the only reasonable construction of the relevant statute does not go so far.

The statute is designed to prevent a real estate agent from developing a conflict of interest between the agent and his customer. The statute prohibits an agent from "paying or receiving any rebate, profit, compensation or commission from any person other than his principals...." Miss. Code Ann. § 73–35–21. The statute is clear in its purpose when it prohibits the receipt of things of value from those not his principal. The agent's loyalty is due his principal and that must be the exclusive source of his fidelity and remuneration. The only difficulty is in the conjunctive proscription of payments made by an agent to persons other than his principal. A rebate or gift to a potential buyer of a listed home which does not alter the purchase

price, or the agent's commission, does not present a conflict of interest, and in fact could serve the seller's interest. The statute proscribes only deceptive practices. The Mississippi legislature obviously enacted this statute to protect the agent's customers and the general public, not to protect brokers by preventing them from being induced to part with a portion of their commission. We therefore interpret the statute to apply to prevent rebates or commissions paid by third parties to the agent and gifts paid by an agent to another only when the payment creates a conflict of interest to the client's detriment. So interpreted, the statute does not implicate the first amendment.

The Popes produced no proof that indicates that they are prohibited or deterred from advertising their services in a truthful manner. They have thus raised no claim under the first amendment.

### V. The Pendent State Claims

Following the dismissal of all federal claims, the district court dismissed the Popes' pendent state law claims. The Popes question this dismissal. As we have previously observed, however, "[i]n the absence of a federal claim, a district court may in its discretion, and generally should, dismiss pendent state law claims." *Slaughter v. Allstate, Inc.,* 803 F.2d 857, 859 (5th Cir.1986).

For the foregoing reasons, the summary judgment dismissing the plaintiff's claims with prejudice is

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, concurring in part and concurring in the result:

I concur in the whole of the court's opinion except its resolution of the Popes' constitutional challenges to Mississippi's statutory prohibition against their giving gifts to customers under Miss.Code Ann. § 73-35-21. I do not agree with the court that the Popes' challenges are sufficiently substantial to require us to construe § 73-35-21 and to imply to the State of Mississippi that this law may be unconstitu-

tional if the State does not accept our construction. Nonetheless, and for the same reason, I concur in the court's result.