Troy D. BARNETT, et al.,
Plaintiffs–Appellants,

v.

PETRO–TEX CHEMICAL CORPORATION, et al.,
Defendants–Appellees.

Robert H. BROUGHTON, et al.,
Plaintiffs–Appellants,

v.

PETRO–TEX CHEMICAL CORPORATION, et al.,
Defendants–Appellees.

No. 89–2146.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1990.

Rehearing Denied March 3, 1990.

---

David M. Feldman, Tamara D. Kontrimas, Vinson & Elkins, Houston, Tex., for Barnett, et al.

Gregg M. Rosenberg, Houston, Tex., for Broughton, et al.

Richard R. Brann, Carol Helliker, Baker & Botts, Houston, Tex., for Petro–Tex Chemical Corp.

LIVELY,* JOLLY and DUHE, Circuit Judges.

LIVELY, Circuit Judge.

This is an appeal from summary judgment for the defendants in a consolidated action seeking damages for claimed violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (1982) (ERISA) and pendent state law claims.

## I.

### A.

In 1984, Tenneco, Inc. sold the assets of its wholly-owned subsidiary, Petro–Tex Chemical Corp., to an unrelated entity, Texas Petrochemicals, Inc. Some Petro–Tex employees accepted immediate employment with Texas Petrochemicals while others exercised an available option and took early retirement around the time of the sale. Members of both groups eventually filed suits against Petro–Tex and Tenneco, claiming breach of contract and ERISA violations.

Forty-seven former Petro–Tex employees who accepted employment with Texas Petrochemicals (Barnett plaintiffs) filed a complaint in a Texas district court. They charged that the sale resulted in their involuntary termination and that none of them received the notice of termination required by their employment contracts. Although these plaintiffs accepted employment with Texas Petrochemicals, they complained that they were not given the same jobs or salaries that they had with Petro–Tex. In addition, the Texas Petrochemicals benefit package was worth less than the one they had at Petro–Tex.

Eleven of the employees who accepted early retirement (Broughton plaintiffs) filed a complaint in the United States District Court for the Southern District of Texas. They claimed that Petro–Tex and Tenneco denied them severance benefits in violation of an employer's duties under ERISA, and breached their contract of employment.

The defendants removed the Barnett plaintiffs' case to the United States District Court for the Southern District of Texas where it was consolidated with the Broughton plaintiffs' case on motion of the defendants and over the objections of the plaintiffs. The district court denied the Barnett plaintiffs' motion to remand their action to the state court. Pursuant to a local rule the consolidated action proceeded as "Troy D. Barnett, et al. v. Petro–Tex Chemical Corp., et al." Counsel for each group of plaintiffs continued to press that group's claims separately.

### B.

The district court granted summary judgment in favor of the defendants on all claims. The final judgment dismissing the consolidated action was signed by the district judge on December 27, 1988, and entered by the clerk on December 30, 1988. On January 9, 1989, the Broughton plaintiffs filed a motion for reconsideration. On January 25, 1989, the Barnett plaintiffs filed a notice of appeal, as follows:

Troy D. Barnett, Et Al., Plaintiffs,

v.

Petro–Tex Chemicals Corp. & Tenneco, Inc., Defendants.

### NOTICE OF APPEAL

Notice is hereby given that Troy D. Barnett, et al., Plaintiffs above-named, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the

---

* Circuit Judge of the Sixth Circuit, sitting by designation.

Final Judgment entered in this action on December 30, 1988....

This notice was signed by an attorney who had represented the Barnett plaintiffs throughout the district court proceedings.

On January 25, 1989, the district judge signed an order denying the Broughton plaintiffs' motion for reconsideration. This order was entered January 30, 1989. On February 24, 1989, the Broughton plaintiffs filed a notice of appeal as follows:

Troy D. Barnett, et al., Plaintiffs,

v.

Petro–Tex Chemical Corporation and Tenneco, Inc. Defendants.

NOTICE OF APPEAL

Notice is hereby given that Robert H. Broughton, et al., Plaintiffs above-named, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Final Judgment entered in this action on December 30, 1988 and from the Order denying Plaintiffs' Motion for Reconsideration entered in this action on January 30, 1989.

This notice was signed by the attorney who had represented the Broughton plaintiffs throughout the district court proceedings.

C.

The defendants filed a motion to dismiss the Barnett plaintiffs' appeal as untimely and the Broughton plaintiffs' appeal as to all plaintiffs except Robert H. Broughton. The motion was referred to the hearing panel. The defendants argue that the Barnett plaintiffs' notice of appeal was premature, since the Broughton plaintiffs' motion for reconsideration was pending at the time this notice of appeal was filed. The Barnett plaintiffs did not file a new notice of appeal within 30 days after the entry of the order disposing of the motion for reconsideration. While conceding that the notice of appeal filed by the attorney for the Broughton plaintiffs was timely, the defendants contend that the notice was effective only to appeal the judgment against Robert

H. Broughton, the only appellant named in the notice.

The Barnett plaintiffs respond that they filed a "Form of Appearance of Counsel" on February 27, 1989, which listed the name of each Barnett plaintiff seeking to appeal the final judgment. They argue that this document, filed within 30 days after entry of the order denying the Broughton plaintiffs' motion for reconsideration, advised the court that all the Barnett plaintiffs were appealing. They argue, further, that since the district court entered only one final judgment in the consolidated cases, only one notice of appeal was required. The Broughton plaintiffs' timely appeal stated that the "Plaintiffs above-named" appealed, and the caption showed Troy D. Barnett, et al. as plaintiffs. Thus, they contend that the Broughton plaintiffs' notice, when combined with their own Form for Appearance of Counsel, was effective to appeal the final judgment on behalf of all the Barnett plaintiffs.

In the alternative, the Barnett plaintiffs maintain that the Broughton plaintiffs' motion for reconsideration did not affect the time for a notice of appeal by the Barnett plaintiffs. Therefore, they argue, their January 25, 1989, notice of appeal was not premature and they were not required to file a new notice of appeal.

The Broughton plaintiffs argue that their notice of appeal should be amended to add the names of all the Broughton plaintiffs as appellants. They argue, in the alternative, that the case should be remanded to the district court for clarification of the final judgment. They contend that the judgment is ambiguous since the district court merely wrote that "[t]he plaintiffs take nothing" without designating to which of the 58 plaintiffs the judgment applied.

All issues related to the notices of appeal have been fully briefed by the parties.

II.

The defendants' motion to dismiss raises questions under two different rules of appellate procedure. Federal Rule of Appellate Procedure 3(c) states, "The notice of appeal shall specify the party or parties

taking the appeal...." Rule 4(a)(4) provides that if a timely motion is filed in the district court by any party under Rule 59 of the Federal Rules of Civil Procedure to alter or amend a judgment, the time for all parties to appeal runs from entry of the order granting or denying the motion. The Rule continues: "A notice of appeal filed before the disposition of [the motion] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."

## A.

■ We examine the Barnett plaintiffs' notice of appeal first. The motion for reconsideration is treated as a civil procedure Rule 59(e) motion to alter or amend the judgment, thus bringing appellate Rule 4(a)(4) into play. *Benson v. Bearb*, 807 F.2d 1228 (5th Cir.1987). That rule provides that a motion filed "by any party" causes the time for appeal "for all parties" to run from entry of the order, and renders a notice of appeal filed before disposition of the motion of "no effect." Thus, the pendency of the Broughton plaintiffs' motion rendered the Barnett plaintiffs' January 25, 1989, notice of appeal a nullity.

■ The Barnett plaintiffs' argument that the Form for Appearance of Counsel, which listed all the plaintiffs represented by the filing attorney, should be treated as a timely notice of appeal cannot be sustained. In *Van Wyk El Paso Investment, Inc. v. Dollar Rent–A–Car–Systems*, 719 F.2d 806 (5th Cir.1983), this court rejected the same argument now made by the Barnett plaintiffs. In *Van Wyk*, Rule 4(a)(4) rendered a premature notice of appeal ineffective, and the would-be appellant relied on several documents which it filed within 30 days of entry of final judgment as providing constructive notice of appeal. One of the documents relied upon was a Form for Appearance of Counsel. Refusing to treat the documents relied upon as the equivalent of a notice of appeal, this court characterized such documents as "no more than steps in the perfection of the prematurely noticed appeal." *Id.* at 807. *Briggs*

*v. Procunier*, 764 F.2d 368 (5th Cir.1985), does not hold to the contrary. In *Briggs*, the notice of appeal was ineffective, but the plaintiff "rescued his appeal," by filing a motion to clarify the record. *Id.* at 370. This motion, unlike the documents in *Van Wyk*, contained all of the information required of a notice of appeal by Rule 3(c). *Id.* at 370–71.

*Page v. DeLaune*, 837 F.2d 233 (5th Cir. 1988), likewise provides no support for the Barnett plaintiffs' argument. The *Page* court held that several documents, considered together, were sufficient to satisfy Rule 3. It noted the limits to its decision, however, and stated specifically that a Form for Appearance of Counsel plus three communications from court clerks would not suffice. *Id.* at 237.

The Broughton plaintiffs' motion for reconsideration controlled the time for filing a notice of appeal by all the parties to the action, including the Barnett plaintiffs. Because the Barnett plaintiffs did not follow their ineffective notice with a new timely notice of appeal, as required by Rule 4(a)(4), this court has no jurisdiction over their attempted appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); *Harcon Barge Co., Inc. v. D. & G. Boat Rentals, Inc.*, 746 F.2d 278, 280–81 (5th Cir. 1984), *cert. denied*, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986).

## B.

■ The Broughton plaintiffs' notice of appeal contained the caption assigned by the district court to the consolidated case and designated "Robert H. Broughton, et al., Plaintiffs above-named" as the appealing parties. Rule 3(c) requires that the notice of appeal "specify the party or parties taking the appeal...." In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Court held that the use of "et al." in a notice of appeal "utterly fails to provide" notice to the court and opposing party of the identity of the appellant or appellants. *Id.* 108 S.Ct. at 2409. Thus the statement that Robert H. Broughton, et al., appealed

the final judgment brought only the appeal of Broughton himself before the court of appeals. The court lacks jurisdiction over any intended appeal by the other Broughton plaintiffs. Strict compliance with Rule 3(c) is a jurisdictional requirement. *Id; Smith v. White,* 857 F.2d 1042, 1043 (5th Cir.1988).

This court has held in a case decided since *Torres* that the specification of one plaintiff, followed by "et al.," was sufficient to effect an appeal by the only other plaintiff in the case. *Pope v. Mississippi Real Estate Commission,* 872 F.2d 127 (5th Cir.1989). The court distinguished *Torres* "in the limited context of this two party action." *Id.* at 129. It was clear that "et al." could refer only to the other plaintiff. In the context of a two party action, the use of "et al." does not leave the court "unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions." *Torres,* 108 S.Ct. at 2409. The unnamed plaintiffs' in the present case can find no comfort in *Pope.* The unnamed plaintiffs in Barnett number 46, and in Broughton they number 10.

### C.

Barnett also raises the question whether the Broughton plaintiffs' timely notice of appeal brought the individual appeal of Troy D. Barnett before this court. As Barnett asserts, when cases have been consolidated in district court and disposed of by entry of one final judgment, a single notice of appeal may be used by all the appealing parties. That notice of appeal must, however, satisfy the jurisdictional requirements of Rule 3(c) by providing "notice both to the opposition and to the court of the identity of the appellant or appellants." *Torres,* 108 S.Ct. at 2409.

■ The Broughton plaintiffs' notice of appeal bore the caption, "Troy D. Barnett, et al., Plaintiffs," and stated that "Robert H. Broughton, et al., Plaintiffs above-named" appealed from the final judgment. The only "Plaintiffs above-named" were Troy D. Barnett, et al. The use of "et al."

was not effective to notify the court and the defendants that any unnamed person was appealing. We believe, however, that the caption and the quoted reference to above-named plaintiffs, read together, gave sufficient notice of the identity of the appellants—Robert H. Broughton and Troy D. Barnett.

■ It is of no consequence that the attorney who filed the Broughton notice of appeal did not represent Barnett and probably did not intend to include him in the appeal. Our decision must turn on whether the notice of appeal complies with Rule 3(c), not on the intent of the drafter of the notice. This is made clear by the opinion in *Torres.* The *Torres* notice of appeal was intended to include Jose Torres as an appellant. The Court found, however, that "[i]t is undisputed that the omission [of Torres' name] in the notice of appeal was due to a clerical error on the part of a secretary employed by petitioner's attorney." 108 S.Ct. at 2407. If a party who intended to appeal may be shut out by a clerical error, surely a party who also intended to appeal must be included when someone files a form referring to "Plaintiffs above-named" and that person is the only party named above.

■ Our discussion of *Torres* makes clear that the Broughton plaintiffs' notice of appeal is effective to perfect an appeal by Robert H. Broughton only among the Broughton plaintiffs. The addition of "et al." does not confer jurisdiction on this court over attempted appeals by any of his co-plaintiffs in his original suit. The Broughton plaintiffs assert that their notice of appeal should be amended to include all of the names of those plaintiffs. *Torres* does not permit this. The Supreme Court stated, "Permitting courts to exercise jurisdiction over unnamed parties after the time for filing a notice of appeal has passed is equivalent to permitting courts to extend the time for filing a notice of appeal." 108 S.Ct. at 2408. Courts of appeal have no power to extend the time for filing a notice of appeal.

The Broughton plaintiffs also argue that this court should remand the case to the district court for clarification of its "ambiguous" judgment. We find no ambiguity in the judgment. The district court adjudged that "[t]he plaintiffs take nothing." The district court consolidated the two cases and directed that they proceed as a "unified case." The reference to "the plaintiffs" clearly included all plaintiffs in both of the original actions.

This court has jurisdiction over the appeals of the individual plaintiffs, Troy D. Barnett and Robert H. Broughton, but has no jurisdiction over attempted appeals by any other plaintiffs in the two actions who were not named in Robert Broughton's timely notice of appeal.

### III.

The principal remaining issue on appeal is whether the district court properly denied summary judgment in favor of the plaintiffs and properly granted the defendants' motion for summary judgment. The district court held that ERISA does not apply, and that the plaintiffs' right to severance pay is controlled by the provisions of their individual contracts of employment. The plaintiffs do not contest the ERISA ruling, and we are concerned with the summary judgment rulings only as they apply to the contract claims.

### A.

We do not find Barnett's contract in the record. A copy of Broughton's contract was filed with his complaint, and the parties have indicated that the operative provisions are the same. Broughton's contract dealt principally with the protection of trade secrets, contained a limited non-competition clause, and required disclosure to the employer of inventions, discoveries and improvements in which the employee was involved. The final paragraph of the agreement stated:

> Parties hereto agree that except by written mutual consent, the employment covered by this Agreement shall not terminate until either party hereto shall have given the other party at least ninety

(90) days prior written notice of the intention to terminate said employment; provided, however, Petro–Tex reserves the right to terminate such employment at any time prior to the expiration of said ninety (90) day period by the payment of the entire salary which might be due and payable Employee for and during the said ninety (90) day notice period.

The defendants did not give the required notice prior to the sale of Petro–Tex to Texas Petrochemicals. Both plaintiffs sued for payment of salary in lieu of the prescribed notice, as provided for in the quoted language. The defendants maintain, as they did in the district court, that neither employee was terminated within the meaning of the agreement. They argue that there was no termination because the sale did not interrupt the plaintiffs' employment. Both immediately went to work at the same plant for the new owner. Although the new jobs were not identical, the work and pay were substantially the same. Broughton, however, apparently retired shortly after the sale upon determining that his benefits with Texas Petrochemicals would be less than as a Tenneco early retiree.

The plaintiffs argue that they were terminated when their employment relationship with Petro–Tex was brought to an end by the sale of the employer's assets to Texas Petrochemicals. They contend that it is immaterial that they were hired immediately by Texas Petrochemicals and suffered no period of unemployment. The agreement spoke only of a termination by Petro–Tex, and the right to notice or salary was not contingent upon the decision of the purchaser whether to offer them employment. They also assert that the defendants stipulated that there was a termination and that the district court ignored the stipulation in ruling on the cross-motions for summary judgment.

Barnett also argues that the district court abused its discretion in consolidating the cases and in denying his motion for a remand to the state court. Broughton likewise contends that the district court abused its discretion in consolidating the cases.

## B.

The district court filed a memorandum with its summary judgment order. The memorandum disposed of the breach of contract claims as follows:

The principal issue determining Petro–Tex's breach of contract is whether the sale of Petro–Tex to Texas Petrochemical was a termination of Petro–Tex employees. Termination means to discontinue the employment of a worker, not a mere change in corporate ownership. Upon the sale, Texas Petrochemicals, the new owner, provided immediate jobs to the former employees. Admitting that some of the employees obtained different responsibility and compensation, the former employees' jobs were not terminated by the sale of Petro–Tex.

Contracting for pay in lieu of a notice of termination is intended to help an individual facing an unexpected period of unemployment to ease the financial burdens while looking for a new job. The employees are not entitled to termination pay because the employees were not terminated.

Although the salary is substantially the same, the employees claim that they have lost up to forty percent of their compensation from Petro–Tex, direct and indirect. At some point, a decrease in total compensation would amount to a constructive termination but not in this case. A forty percent decrease admittedly is significant but it is not substantial enough to require the payment of termination pay.

## IV.

### A.

█ The plaintiffs contend that the district court erred by not granting them summary judgment on the basis of the defendants' stipulation that they were terminated. An examination of the record discloses no stipulation by the defendants that the plaintiffs were terminated within the meaning of the notice provision of the contract. The defendants consistently took the position that the notice provision was not applicable to former Petro–Tex employees who were offered comparable employment by Texas Petrochemicals. During the deposition of H.R. Bowers, an attorney for the defendants stated, "We will stipulate that the employment relationship with Petro–Tex was terminated." This was nothing more than an agreement to stipulate to an indisputable fact. It was not a stipulation that the plaintiffs were terminated in the legal sense that the contract required for triggering the right to notice or salary in lieu of notice. Thus, the district court properly denied the plaintiffs' motions for summary judgment.

### B.

The district court erred, however, in granting the defendants' motion for summary judgment. A court may grant summary judgment only if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court held that the provision in the individual agreements for pay in lieu of a notice of termination "is intended to help an individual facing an unexpected period of unemployment to ease the financial burdens while looking for a new job." Assuming this intention, the district court held that the employees were not terminated within the meaning of the agreements. Nothing in the agreements requires either conclusion. The agreements do not define the words "terminate" and "termination," and contain no statement of the reason for including the termination provision.

Courts that have considered the question are badly split over whether a period of unemployment is required for an employee to be eligible for severance or termination pay.

### 1.

In *Younger v. Thomas International Corp.*, 275 Ark. 327, 629 S.W.2d 294 (1982), the Supreme Court of Arkansas affirmed a trial court's rejection of a claim for pay in lieu of notice by employees of a plant that was sold. All employees continued to work

at the same or similar jobs, earning at least the salary they were receiving prior to the sale. The employees eventually received a benefits package that equalled the one they enjoyed before the sale. In affirming the trial court, the Supreme Court relied heavily on a statement of purpose in the agreement:

The purpose of termination allowance is to provide financial assistance for a short period of time to allow for readjustment for salaried employees who are terminated through no fault of their own.

*Id.* 629 S.W.2d at 296. There is no such statement of purpose in the individual agreements in the present case. Furthermore, the employer's severance policy in *Younger* stated that termination would not be paid when an employee was offered an equivalent job opportunity. We find no such policy statement in the present record.

The defendants also rely upon *Linz v. Champion International Corp.*, 208 Mont. 99, 675 P.2d 979 (1984). They fail to note, however, that the *Linz* court specifically rejected the trial court's reliance on the fact that the plaintiff was offered comparable employment as the basis of denying severance payments. Instead, the court looked to a definition of "terminate" in prior Montana decisions. Applying this definition, it held that Linz was not entitled to benefits. Also as in *Younger*, the decision in *Linz* was reached after a full trial, not on summary judgment.

Applying South Carolina law, the court denied benefits to former employees in *Livernois v. Warner–Lambert Co., Inc.*, 723 F.2d 1148 (4th Cir.1983). The court emphasized that each case dealing with severance benefits upon termination must be considered on its own facts, since "the variation of language spelling out the particular circumstances in which a right to severance pay will arise approach[es] the infinite...." *Id.* at 1151. The court based its decision primarily on the fact that the plaintiffs' employment with the purchaser was substantially the same in all material respects as before the sale. In reaching its conclusion, the court found it necessary "first ... to discard as inapplicable cases where the nature of employment by the successor company, in terms of salary and other benefits, is markedly different and less favorable, from the employees' point of view, than that in force when the predecessor was the employer...." *Id.* at 1152. In the present case the plaintiffs claimed a forty percent decrease in total compensation, and the district court correctly assumed this claim to be true for purposes of summary judgment. Without further analysis, however, the district court treated this significant decrease as immaterial.

The defendants also seek to uphold the district court's decision by citing federal decisions denying severance benefits to employees hired by a successor. *E.g. Acton v. Tosco Corp.*, 815 F.2d 1161 (8th Cir. 1986); *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985), *aff'd without opinion sub nom. Brooks v. Burlington Industries, Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209 (7th Cir.1983). Although the courts in these and similar cases upheld the denial of severance benefits, they did so in the context of reviewing the decisions of plan administrators under benefit plans subject to ERISA. When these and similar decisions were rendered, such determinations by administrators were conclusive unless found to be arbitrary or capricious. The Supreme Court has held that this is the wrong standard of review—that a denial of ERISA benefits is to be reviewed under a de novo standard unless a plan gives the administrator certain discretionary authority. *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Although the courts that affirmed denial of benefits under the arbitrary or capricious standard indicated, in some cases, that they agreed with the determination that an employee who is offered comparable employment by a purchaser is not entitled to severance benefits, the denials were not subjected to an independent legal analysis. Another ERISA case, applying the arbitrary or capricious standard, has upheld a decision awarding severance benefits even though the employees suffered no period of unemployment because the pur-

chaser retained them in their previous jobs. See *Harris v. Pullman Standard, Inc.,* 809 F.2d 1495 (11th Cir.1987). We are not persuaded that these ERISA decisions form a basis for affirming summary judgment in this case.

### 2.

In *Gerson v. Diamond Shamrock Corp.,* 710 S.W.2d 368 (Mo.App.1986), the court held that employees who immediately went to work for a purchaser were entitled to severance benefits when the division for which they worked was sold. The original employer's policy provided benefits "[w]here separation from employment is ... because of a permanent layoff due to lack of work...." The court held that "[s]ale of the division ended their connection with [the] employer; there was no further work for them with [the] employer." *Id.* at 369. The court found nothing in the controlling language that "distinguishes the case where they are offered employment with the new owner from the case where they are not offered such employment." *Id.*

In *Chapin v. Fairchild Camera and Instrument Corp.,* 31 Cal.App.3d 192, 107 Cal.Rptr. 111 (1973), the employer's policy provided for severance pay that was "intended to cover the readjustment period required by the employee to obtain another position." *Id.* 107 Cal.Rptr. at 113. When the division for which the plaintiffs worked was sold, the purchaser offered comparable employment with full seniority rights and substantially equal fringe benefits. The termination allowances provided by the purchaser were not equal to those of the original employer. Shortly after the sale the purchaser began terminating employees. The purchaser paid some of the terminated employees the smaller benefits provided by its policy.

The California Court of Appeals held that the employees were entitled to receive from their original employer the full amount of severance pay provided by its policy. The court concluded that the sale was a layoff due to lack of work within the meaning of the original employer's policy.

Having sold the division, the employer had no work to offer the employees of the sold division. The fact that the plaintiffs were employed immediately by the purchaser was immaterial. Citing *Adams v. Jersey Central Power & Light Co.,* 36 N.J.Super. 53, 114 A.2d 776 (1955), the *Chapin* court stated:

> [U]nemployment is not a prerequisite to the right to separation pay which may, and frequently does, exist where there is no interruption whatever in the continuity of employment. Separation pay is not analogous to, nor is it a form of, unemployment compensation. Rather, it is a kind of accumulated compensation for past services and a material recognition of their past value.... It concerns the past, not the future, and once it is earned, it becomes payable no matter what may thereafter happen.

107 Cal.Rptr. at 115–16.

We have not attempted to identify or discuss all the cases dealing with the issue of severance benefits where an employer sells the assets of a company or division and the purchaser offers immediate employment to the seller's former employees. We have discussed a sufficient number of decisions to indicate that each case is controlled by the language of a policy or agreement and that it is not universally accepted that a period of unemployment is a prerequisite for entitlement to termination pay.

### C.

 In a diversity case applying Texas law, this court has defined "termination of employment" when used in a group insurance policy as "the complete severance of the relationship of employer and employee...." *Bliss v. Equitable Life Assurance Society of the United States,* 620 F.2d 65, 69 (5th Cir.1980) (citation omitted). Literally applied, this definition could lead to the conclusion that Barnett and Broughton were terminated. It is not clear, however, that this definition applies in the context of an employment agreement. There are genuine issues of material fact concerning whether the complete severance of em-

ployment relationships resulted in termination and whether the reduced benefits offered by Texas Petrochemicals required a finding that the employees were terminated even though they were offered immediate employment by the purchaser.

We find no support in this record for the district court's conclusion that the plaintiffs, as a matter of law, were not terminated within the meaning of their individual agreements. The district court cited no authority for its conclusion and referred to no record basis for its determination of the intent or purpose of the agreements. Unless the terms of a contract are clear, questions of interpretation are questions of fact. *Carpenters Amended & Restated Health Benefit Fund v. Holleman Construction Co.*, 751 F.2d 763, 766 (5th Cir. 1985). At least two factual issues precluded the entry of summary judgment in favor of the defendants: (1) the intent of the parties in providing for notice and payment of salary in lieu of notice, and (2) the meaning of "terminate" as used in the individual agreements.

### V.

An examination of the record convinces us that the district court did not abuse its broad discretion either in consolidating the two cases, which arose out of the same event, or in denying the Barnett plaintiffs' motion for remand.

The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.