IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-1277
Summary Calendar
_____

DAVID O. EPPS,

Plaintiff-Appellant,

versus

NCNB TEXAS,

Defendant-Appellee.

_____

Appeal from the United States District Court for
the Northern District of Texas
(3:92 CV 05090H)
_____

October 8, 1993

Before REAVLEY, DAVIS and DeMOSS, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Appellant David Epps (Epps) brought suit for the alleged

breach of an obligation to pay severance benefits found in his

employment agreement.  He complains on appeal that the district

court erred in denying his motion to remand, and in granting the

motion for summary judgment filed by Appellee NationsBank of

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

Texas, N.A. (NationsBank) (formerly known as NCNB Texas National Bank (NCNB)).[1]  We affirm.

## I.  REMOVAL

The district court properly denied the motion to remand because the case was removable to federal court.  A defendant may remove a case on grounds that the plaintiff has asserted a claim which is preempted by § 514(a) of the Employment Retirement Security Act (ERISA), 29 U.S.C. § 1144(a).  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).  Section 514(a) is "deliberately expansive, and designed to ‹establish pension plan regulation as exclusively a federal concern.'"  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).  State law claims, regardless of how they are pleaded, are preempted if they "relate to" an ERISA plan.  *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 113, 140 (1990); *Taylor*, 481 U.S. at 62.  When a court must refer to an ERISA plan to determine the plaintiff's retirement benefits and compute the damages claimed, the claim relates to an ERISA plan. *Christopher v. Mobil Oil Corp*, 950 F.2d 1209, 1218-20 (5th Cir. ), *cert. denied*, __ U.S. __, 113 S. Ct. 68 (1992); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir. 1989).  In this case, Epps did not invoke ERISA or make specific reference to an employee benefit plan covered by ERISA.  However, he did assert a

---

[1]     Epps' employment with NCNB ended before NationsBank became the successor-in-interest to NCNB.

claim for the "loss of pension and retirement benefits which would have accrued and vested" but for the alleged breach of the March 28, 1989 letter agreement. As the district court correctly concluded, this claim is preempted because the letter agreement does not specify the amount or other terms of Epps's retirement benefits, and the court would have to refer to the NCNB Retirement Plan[2] to determine Epps's retirement benefits and calculate the damages claimed. *Hartle v. Packard Elec.*, 877 F.2d 354 (5th Cir. 1989), cited by Epps, is distinguishable because the *Hartle* court noted that the case was "not an action to recover benefits under a plan." *Id*. at 356.

## II.   SUMMARY JUDGMENT

Epps's claims and the summary judgment entered against him center on the following sentence in the letter agreement:  "If you should cease to be employed by NCNB Texas for any reason other than termination for cause or voluntary termination, we will pay severance on the following basis."  The parties do not dispute that Epps left NCNB and took another job after NCNB changed his job responsibilities.  Epps contends that his departure was not a voluntary termination, or stated another way, that NCNB constructively discharged him without cause by changing his job responsibilities.  He further argues that the letter agreement, including the quoted sentence, is ambiguous and that summary judgment was therefore inappropriate.

_____

[2]     Epps never disputed that the retirement plan in question is an employee benefit plan covered by ERISA.

While the letter agreement might be deemed ambiguous in another context, we agree with the district court that, under the undisputed facts and applicable law in this case, summary judgment was appropriate. It is undisputed that NCNB never directly terminated Epps's employment, and prior to his departure his salary and title remained the same. Epps admitted in deposition that the letter agreement reflected the parties' negotiations and the agreement they had reached. The letter does not spell out the specific job duties and responsibilities that Epps was to assume. NCNB never even threatened to terminate Epps, though he expressed some concern that, at the end of the five-year period referenced in the letter agreement, he would be terminated. There is no evidence in the record that Epps was harassed or otherwise subjected to conditions that could lead an objective fact-finder to conclude that NCNB attempted to force Epps's resignation. On the contrary, record evidence confirms that, after NCNB tightened its lending requirements for the insurance industry, it informed Epps that his expertise was still extremely important to the bank, and assigned him numerous specific responsibilities relating to the bank's insurance-industry loans. Based on the summary judgment evidence presented, the district court found that "Plaintiff's new job responsibilities were to continue to manage the existing accounts in the portfolio, liquidate other existing accounts in the portfolio, and assist in the analysis of other insurance credits within the Bank." Epps complains, however, that his new position

4

did not involve the management and marketing responsibilities which he desired, and that the new position was essentially a technical staff-support position, which he would never have accepted in the first instance.

While we sympathize with Mr. Epps (particularly in light of his age and the career he gave up to join NCNB), we must conclude that the summary judgment was properly granted. The letter agreement does not provide for severance benefits if there is merely a change in job position or responsibilities. "Courts cannot read into a contract that which is not there." *Southwest E & T Suppliers Inc., v. American Enka Corp.*, 463 F.2d 1165, 1166 (5th Cir. 1972) (applying Texas law). "Where the parties have bargained freely and on equal terms their contract ought not be extended by implication or enlarged beyond the actual terms of the agreement entered into by the parties." *Abilene Sav. Ass'n v. Westchester Fire Ins. Co.*, 461 F.2d 557, 561 (5th Cir. 1972) (applying Texas law).

Texas law does recognize the doctrine of constructive discharge, which has been applied in the context of an alleged breach of an employment contract. *Hammond v. Katy Indep. School Dist.*, 821 S.W.2d 174, 177 (Tex. App.--Houston [14th Dist.] 1991, no writ). Courts originally developed the doctrine in federal labor and civil rights cases, and apply it only if the employer made conditions so intolerable that the employee reasonably felt compelled to resign. *Id.* A mere change of position or job responsibilities, without more, will not support a claim for

constructive discharge. *Id*. at 178; *Jurgens v. Equal Employment Opportunity Comm'n*, 903 F.2d 386, 391-92 (5th Cir. 1990); *Jett v. Dallas Indep. School Dist.*, 798 F.2d 748, 755 (5th Cir. 1986), *remanded in part on other grounds*, 491 U.S. 701 (1989). Even a slight decrease in pay, coupled with some loss of supervisory responsibilities, will not, absent "aggravating factors," constitute a constructive discharge. *Jurgens*, 903 F.2d at 392-93. Here, Epps retained his same title and compensation. Furthermore, "constructive discharge cannot be based upon the employee's subjective preference for one position over another." *Jett*, 798 F.2d at 755. The district court therefore correctly concluded that the summary judgment record lacks evidence of conditions that could support a finding of constructive discharge.

We agree with the district court that *Barnett v. Petro-Tex Chem. Corp.*, 893 F.2d 800 (5th Cir.), *cert. denied*, 497 U.S. 1025 (1990), is distinguishable. There, we reversed a summary-judgment finding that there had been no "termination" of employment under certain employment contracts when the employer's corporate assets were sold to a another corporate entity, and the employees then began working for the new corporation. However, in *Barnett*, unlike the present case, the original employer-employee relationship ended with the sale of assets, and the employees claimed a loss in compensation from the new employer of up to 40 percent. We concluded that a fact issue therefore

6

existed as to whether the employees had been terminated under their employment contracts.

We also agree with the district court that a more analogous case is *Seal v. Knorpp*, 957 F.2d 1230 (5th Cir. 1992). In *Seal*, an employee, Seal, was a party to both an employment contract and a separate "trust agreement" with his employer. Both agreements assigned certain benefits to the employee in the event of termination without cause. However, the employment contract had a specific provision stating that a substantial change in the employee's level of responsibility and authority would be deemed a termination. The trust agreement had no similar provision. Some years after entering into the agreements, Seal's authority was substantially reduced. This court concluded that the reduction in Seal's level of authority constituted a termination under the employment agreement, because that agreement expressly addressed such a contingency. However, we held that, inasmuch as the trust agreement had no similar provision, a reduction in authority did not constitute a termination under that agreement, and a mere change in responsibility or authority did not amount to a constructive discharge under applicable Texas law. *Id.* at 1235-37.

As for Epps's claim for loss of pension and retirement benefits, this claim is based solely on the failure of NCNB and NationsBank to make severance payments under the letter

agreement, which Epps contends was a breach of contract.[3]

Because we find no error in the district court's holding that

there was no breach of the letter agreement, this claim also

fails.

AFFIRMED.

---

[3]     Epps so limited the claim in trying to defeat NCNB's
preemption argument and obtain a remand.  For example, on appeal
Epps describes his claim as one for "pension damages caused by
breach of an employment contract . . . ." and for "damages for
‹loss of pension and retirement benefits which would have accrued
and vested' but for the Defendant's breach of that contract."
Appellant's brief at 2-3 (quoting original petition).  He goes on
to maintain on appeal that he "does not claim a breach of the
retirement plan or a failure to pay benefits under its terms.
Instead, Plaintiff claims damages to his pension entitlement
which would have accrued but for the Defendant's breach of the
employment contract."  *Id*. at 10.