**Linda PAGE, Plaintiff-Appellant Cross-Appellee,**

v.

**Kathryn A. DeLAUNE, et al., Defendants-Appellees Cross-Appellants.**

**No. 86–2736.**

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1988.

---

Robert Ozer, Asst. Atty. Gen., Austin, Tex., for DeLaune, et al.

Before SNEED,* REAVLEY, and JOHNSON, Circuit Judges.

* Circuit Judge for the Ninth Circuit, sitting by

JOHNSON, Circuit Judge:

Linda Page appeals the summary judgment dismissal of her suit under 42 U.S.C. § 1983 for her discharge from employment by Texas A & M University. Finding genuine issues of material fact as to whether Page's supervisors violated her constitutional right to due process, we reverse and remand.

## I. BACKGROUND

In 1981, Texas A & M University hired Linda Page as an instructor-counselor to work with the handicapped. In April 1982, Page became a site supervisor in an ex-offender program operating under the federal Comprehensive Employment and Training Act (CETA). 29 U.S.C. §§ 801 *et seq.* University regulations provided that employees such as Page were subject to dismissal only for "adequate cause." Record at 174.

In January 1982, Page's immediate supervisor, Kathryn DeLaune, wrote a memorandum criticizing Page's job performance, particularly her "unprofessional verbal attitude," her "failure to follow instructions," and incidents purportedly showing a lack of loyalty. Record at 117. The memo concluded with the admonition, "Any evidence of a repeat performance will necessitate termination of employment." *Id.* Page responded with a memorandum to DeLaune attributing the incidents to a failure of communication and reaffirming her loyalty.

From this point on, the parties' versions of events differ markedly. Page asserts that her supervisors approved her work, granted her pay raises, and promoted her. DeLaune contends that Page was not promoted, that Page's work was not satisfactory, and that Page was so informed repeatedly. Towards the end of 1982, Patricia Turner, DeLaune's immediate supervisor, spoke at a staff meeting attended by Page and other employees. Turner announced an "open door" policy, inviting observations or complaints about the ex-offender program. On December 12, 1982, Page spoke on the telephone with a co-designation.

worker, Barbara Witte-Howell. Witte-Howell announced her desire to speak to Turner about problems with the program and with DeLaune. Page also expressed a desire to speak with Turner. DeLaune overheard the conversation and she gave Page the option of resigning or being fired. When asked for an explanation, DeLaune replied, according to Page, that she " 'didn't have to have a reason.' " Record at 147. DeLaune fired both Page and Witte-Howell.

Page brought a grievance and was given a formal post-termination hearing. The hearing officer concluded that Page had been denied procedural due process and ordered restoration of her benefits, back pay, and the purging of unfavorable dismissal records from Page's file. Reinstatement was not granted because the term of Page's contract had expired. Page then filed the instant suit against DeLaune, Turner, James Bradley, another supervisor, and the president and regents of A & M University, seeking damages for additional lost wages and for emotional distress. As a settlement, the University offered to pay the award ordered by the hearing officer. Page declined the settlement, but the University subsequently made the payment. The district court granted summary judgment in favor of all the defendants.

## II. DISCUSSION

### A. *Notice of Appeal*

At the outset, we must deal with the question of the adequacy of Page's notice of appeal. On August 8, 1986, the district court entered its order dismissing the case. On August 25, 1986, Page mailed a notice of appeal to the district court and to counsel for DeLaune and the other defendants. DeLaune's counsel received the notice of the appeal on August 27. On September 3, 1986, Page mailed a second notice of appeal to the district court. On September 4, the district court received a letter designating the record on appeal. The district court did not receive the first and second notices of appeal until September 12 and 10, respectively, after the thirty-day period for filing a notice of appeal had expired. Fed.R.

App.P. 4(a)(1). Page filed a timely motion to extend time for a notice of appeal on September 18, 1986, but the district court has not to date acted on that motion. Fed.R.App.P. 4(a)(5).

The "notices of appeal" that Page filed on September 10 and 12 were untimely, absent permission from the district court. Fed.R.App.P. 4(a). However, within the thirty-day period, Page did file two documents that could be construed as the equivalent of a notice of appeal: the notice of appeal sent to DeLaune, and the "designation of record on appeal" sent to the district court. Federal Rule of Appellate Procedure 3 requires that a notice of appeal designate the parties making the appeal, the judgment appealed from, and the court appealed to. Fed.R.App.P. 3(c). The rule goes on to caution against narrow interpretation: "An appeal shall not be dismissed for informality of form or title of the notice of appeal." In *Foman v. Davis*, the Supreme Court reversed a circuit court for "narrowly reading" a notice of appeal that clearly indicated an intent to appeal and "did not mislead or prejudice" the opposing party. 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962). Similarly, this Court has validated notices of appeal that contain the three items of information specified in Rule 3 while clearly notifying the courts and the parties. *Fischer v. United States Dep't of Justice*, 759 F.2d 461, 464 (5th Cir.1985) (construing a timely motion to proceed in forma pauperis as a notice of appeal); *Tidemark, Inc. v. Brazos Port Towing Co., Inc.*, 756 F.2d 1236, 1237 (5th Cir.1985) (accepting a notice of appeal mislabeled as a "motion to appeal"); *Matter of Cobb*, 750 F.2d 477, 479 (5th Cir. 1985); *Cobb v. Lewis*, 488 F.2d 41, 44–46 (5th Cir.1974) (construing a petition to file an interlocutory appeal as a notice of appeal); *see generally* 9 J. Moore, B. Ward, J. Lucas, *Federal Practice*, ¶ 203.16 (1987). As this Court observed in *Cobb v. Lewis*, " 'The rules ... were not adopted to set traps and pitfalls by way of technicalities for unwary litigants....' ... [T]he notice of appeal requirement may be satisfied by any statement, made either to the district

court or to the Court of Appeals, that clearly evinces the party's intent to appeal." 488 F.2d at 45. Of course, this latitude has limits. If the appellant's submissions to the district court ask primarily for reconsideration and only secondarily for leave to appeal, the rule has not been satisfied. *Mosley v. Cozby*, 813 F.2d 659, 660 (5th Cir.1987). A request for an extension of time to file an appellate brief will not suffice, nor will a "Form of Appearance for Counsel" plus three communications from court clerks. *Alamo Chemical Transportation Co. v. M/V Overseas Valdes*, 744 F.2d 22, 23 (5th Cir.1984); *Van Wyk El Paso Investment, Inc. v. Dollar Rent-A-Car Systems, Inc.*, 719 F.2d 806, 807 (5th Cir.1983).

▇ In the instant case, DeLaune and the other defendants received full notice of appeal on August 27, well within the thirty-day period. Apparently without fault on Page's part, the district court received the "notice of appeal" two days late. However, Page's letter designating the record on appeal, which was filed within thirty days, specifies that Page is appealing the district court's August 8, 1986 judgment to the "United States Courts of Appeals for the fifth circuit." Record at 8. The letter thus contains all the information required by Rule 3(c). We hold that this letter, combined with the "notice of appeal" received by DeLaune, satisfies both the letter and the spirit of Rule 3.

### B. *The First Amendment Claim*

▇ The district court granted summary judgment against Page on her first amendment claim, holding that Page's announcement, during the December 12, 1982, telephone call, of an intention to contact DeLaune's superior did not touch on a matter of public concern. A state may not discharge an employee for exercising his right to free speech on matters of public concern. *Rankin v. McPherson*, — U.S. —, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Day v. South Park Independent School District*, 768 F.2d 696,

700 (5th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). An employee who contends that his discharge violated the first amendment must establish that his speech addressed a matter of public concern. *Rankin*, 107 S.Ct. at 2897; *Day*, 768 F.2d at 700. Only if the employee crosses this initial hurdle need the court address other questions, such as whether the speech was a substantial factor in the employer's decision, or whether certain interests of the employer counterbalanced the employee's free-speech interests. *Rankin*, 107 S.Ct. at 2898; *Connick v. Myers*, 461 U.S. 138, 146–47, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362–63 (5th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

In determining whether an employee's speech addresses a matter of public concern, this Court considers the speech and its context and independently reviews the record as a whole. *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690; *Day*, 768 F.2d at 700; *Davis v. West Community Hospital*, 755 F.2d 455, 461 (5th Cir.1985). The issue is a question of law for the court. *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Terrell*, 792 F.2d at 1362 n. 2. The courts will not interfere with personnel decisions "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.

For example, the Supreme Court has found legitimate public interest in the President's welfare policies and an attempt on the President's life (*Rankin*, 107 S.Ct. at 2897–98) and in the need of a school system for a tax increase (*Pickering*, 391 U.S. at 571, 88 S.Ct. at 1736). This Court has held that public employees spoke as citizens on special police treatment for a wealthy subdivision (*Thomas v. Harris County*, 784 F.2d 648, 653 (5th Cir.1986)); on a controversial, federally funded reading program (*Wells v. Hico Independent School District*, 736 F.2d 243, 249 (5th Cir.1984), *cert. denied*, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed. 2d 672 (1985)); and on the power of County

Commissions to oversee a community action program (*Gonzales v. Benavides*, 712 F.2d 142 (5th Cir.1983). On the other hand, public employees were held to speak as employees, not citizens, concerning: the transfer policies and morale problems of a district attorney's office (*Connick*, 461 U.S. at 148–49, 103 S.Ct. at 1690–91); the personnel policies of university police (*Terrell*, 792 F.2d at 1362–63); an unfavorable employee evaluation (*Day*, 768 F.2d at 700–01); and isolated disputes among doctors and other professionals at a public hospital (*Davis*, 755 F.2d at 460–61).

■ The telephone conversation between Page and Witte-Howell chiefly concerned the decision of both employees to go over DeLaune's head and speak to her supervisor, Turner. Such a decision to bypass normal communication channels is clearly a personnel matter internal to the program, not a matter of public concern. Page contends, however, that the conversation also touched on DeLaune's frequent modification of the criteria for admitting ex-offenders into the program. This issue, Page argues, was of public concern because it jeopardized the effectiveness of the program. If the district court had not granted summary judgment on this issue to DeLaune sua sponte, Page argues, she could have presented enough evidence to create a genuine question as to whether the eligibility criteria came up in the telephone conversation.

■ The district court's action was not inappropriate, considering the stage that the case had reached. Both DeLaune and Page had made motions for summary judgment. The district court considered those motions for a year, allowing both sides ample time to file responses and complete discovery. At the time the district court granted summary judgment to DeLaune, Page had included in the record the following statements of the contents of the December 12, 1982, telephone call: that Witte-Howell wished to discuss "problems with the ex-offender program" and Page "also wished to speak to Defendant Turner" (Complaint, Record at 201); that Page and Witte-Howell planned to tell Turner of

"certain problems" (Plaintiff's Motion for Partial Summary Judgment, Record at 146); and that Page voiced "certain criticisms" of DeLaune (Plaintiff's Response to Defendant's Motion for Summary Judgment, Record at 96). A party bearing the burden on an issue cannot sit back and wait for trial when his opponent points out, in a motion for summary judgment, that no evidence has been presented on the issue. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Thomas*, 784 F.2d at 651. Page had the burden to demonstrate that she addressed a matter of public concern, and a passing reference to "problems" in the ex-offender program falls far short of creating a genuine issue on this element. A district court may grant summary judgment sua sponte when the parties have been given adequate time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); C. Wright, A. Miller, & M. Kane, 10A *Federal Practice and Procedure* § 2720 (1983 & 1987 Supp.). The district court did not err in doing so here.

### C. *The Procedural Due Process Claim*

The district court also granted summary judgment to DeLaune and the other defendants on Page's due process claim. In order to evaluate this claim, we must decide (1) whether Page had a property interest in her job at the University; (2) whether DeLaune accorded Page any process due; and (3) whether the actions of DeLaune and other University officials are sheltered by qualified immunity. *Brown v. Texas A & M University*, 804 F.2d 327, 333 (5th Cir.1986).

■ The University does not seriously dispute that Page possessed a property right in her job. State law can create a property interest in continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Schaper v. City of Huntsville*, 813 F.2d 709, 713–14 (5th Cir.1987). Page could only be dismissed for "adequate cause," detailed in University regulations.

Record at 174–77. The Supreme Court and this Court have held that such language suffices to create a property right. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985); *Schaper*, 813 F.2d at 713–14; *Findeisen v. North East Independent School District*, 749 F.2d 234, 237 (5th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985).

Having established that state law gave Page a property right in her employment, we turn to federal law to determine what process was due to Page. *Loudermill*, 105 S.Ct. at 1493. The Due Process Clause requires that a state, before depriving a citizen of property, provide "some kind of a hearing." *Id.*, 105 S.Ct. at 1493; *Davis v. Scherer*, 468 U.S. 183, 192 n. 10, 104 S.Ct. 3012, 3018 n. 10, 82 L.Ed.2d 139 (1984); *Roth*, 408 U.S. at 570 n. 7, 92 S.Ct. at 2705 n. 7. This "hearing" need not be a formal, adversary hearing. *Davis*, 468 U.S. at 191–93, 104 S.Ct. at 3018; *Schaper*, 813 F.2d at 714; *Weisbrod v. Donigan*, 651 F.2d 334, 336 (5th Cir.1981). Due process requires only that the employee receive "notice and an opportunity to respond." *Loudermill*, 105 S.Ct. at 1495. As the Supreme Court put it, "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* This Court has repeatedly upheld the same minimum requirements. *Schaper*, 813 F.2d at 714; *Myrick v. City of Dallas*, 810 F.2d 1382, 1386 (5th Cir.1987); *Brown*, 804 F.2d at 335; *Wheeler v. Mental Health & Mental Retardation Authority*, 752 F.2d 1063, 1067–68 (5th Cir.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed. 2d 64 (1985); *Findeisen*, 749 F.2d at 239; *Bueno v. City of Donna*, 714 F.2d 484, 493 (5th Cir.1983); *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, 182 (5th Cir.1983); *Thompson v. Bass*, 616 F.2d 1259, 1265–66 (5th Cir.), *cert. denied*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980); *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir.1980); *Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir.1976),

*vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978).

 Because the case was dismissed by a summary judgment, we must resolve disputed fact issues in Page's favor. Fed. R.Civ.P. 56(c); *Findeisen*, 749 F.2d at 239. Page asserts that she received no criticism of her work from her supervisors between the January 1982 memorandum and the December 1982 discharge. The district court held, however, that the January 1982 memorandum sufficed, by itself, to meet the "notice and opportunity to respond" requirement. We disagree. Without more, a memorandum written almost a year before termination, regarding incidents not clearly related to the termination, and ending with a general statement that "a repeat performance will necessitate termination" does not constitute adequate notice. Indeed, the University's own hearing officer found that DeLaune did not refer to or rely on the January memo when discharging Page in December. Record at 211. Effective notice must convey the specific reasons for termination; the January 1982 memorandum did not do so. Hence, Page adequately alleges a denial of pretermination due process.

 Finally, we must determine whether Page's right to pretermination notice and an opportunity to respond was "clearly established" in December 1982. If the right was not "clearly established," DeLaune and her superiors are covered by qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A survey of this Court's precedents reveals that Page's pretermination rights were indeed clear at the time of her discharge. By December 1982, this Court had decided *Thompson*, 616 F.2d 1259 (5th Cir.1980); *Glenn*, 614 F.2d 467 (5th Cir. 1980); and *Thurston*, 531 F.2d 1264 (5th Cir.1976). *Thurston* was vacated on other grounds by the Supreme Court, but the holding on due process rights was reaffirmed by this Court on remand. 578 F.2d 1167 (5th Cir.1978). Since Page asserts that she received *no* notice or opportunity to be heard, we are not here confronted with the more difficult questions of

how much notice and opportunity are required. The minimal requirement of *some* notice was "clearly established" by 1982 and has been reiterated many times since. DeLaune, Turner, and Bradley cannot, therefore, appeal to qualified immunity. The district court erred in granting summary judgment to DeLaune, Turner, and Bradley on Page's due process claim.

■ Page has pointed to no evidence in the record linking the president or regents of the University to the denial of pretermination due process. The delay of a few months in paying Page the damages awarded by the University hearing officer does not violate a clearly established right. We therefore affirm the district court's grant of summary judgment to the president and regents.

### D. *CETA as an Exclusive Remedy*

■ On cross-appeal, the University asserts that the CETA grievance procedure that Page used constituted her exclusive remedy, and that the district court should have dismissed Page's section 1983 suit on that ground. In support the University cites *Uniformed Firefighters Ass'n v. City of New York*, in which the Second Circuit held that CETA procedures are the exclusive remedy for a violation of CETA itself. 676 F.2d 20, 22–23 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982). The *Uniformed Firefighters* plaintiffs brought a section 1983 suit based on alleged violations of both CETA and the Equal Protection Clause. The circuit court held that the CETA violation had to be addressed by CETA grievance procedures, but went on to address the merits of the alleged Equal Protection Clause violation. *Id.* at 23. *Uniformed Firefighters*, therefore, stands for the proposition that CETA does not provide the exclusive remedy for constitutional violations. Similarly, this Court has held that the same set of facts can give rise to both a cause of action under the Education for All Handicapped Children Act and a section 1983 constitutional claim. *Espino v. Besteiro*, 708 F.2d 1002, 1007–10 (5th Cir.1983). Since Page's section 1983 suit alleges a violation of the

Due Process Clause, rather than CETA violations, CETA does not limit her relief.

### III. CONCLUSION

Page's filings met the minimum requirements for a timely notice of appeal. The district court did not err in dismissing Page's first amendment claim for failure to allege with specificity that Page's speech touched on matters of public concern. Nor did the district court err in dismissing the remaining claims against the President and Regents of the University. Page's allegations that DeLaune, Turner and Bradley denied her due process, however, do raise genuine questions of material fact that require remand. CETA does not provide the exclusive remedy for Page's constitutional claims. For all of these reasons, the district court's judgment is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.