851 F.Supp. 808 (1994)
Ivan P. COGHLAN, Plaintiff,
v.
H.J. HEINZ COMPANY and Ore-Ida Foods, Inc., Defendants.
Civ. A. No. 3:92-CV-2461-X.
United States District Court, N.D. Texas, Dallas Division.
April 21, 1994.
*809 Hal Keith Gillespie, David Kohlman Watsky, Gillespie Rozen & Tanner, Dallas, TX, for plaintiff.
Kelly Akins, William Jerome Clay, Julia S. Mandala, Gardere & Wynne, Dallas, TX, Alan M. Koral, Neil A. Capobianco, Vedder Price Kaufman Kammholz & Day, New York City, for defendants.
Harlan A. Martin, pro se.

MEMORANDUM OPINION AND ORDER
KENDALL, District Judge.
NOW before the Court are Ore-Ida Foods, Inc.'s Motion to Dismiss Plaintiff's Claim for Disability Discrimination or Alternatively for Summary Judgment, filed on October 29, 1993, the response to that motion and the reply to the response. After reviewing these materials, the Court concludes that the motion should be adjudicated as one for summary judgment rather than as one to dismiss. Having considered these filed materials, the summary judgment evidence and the applicable law, the Court concludes that Ore-Ida's motion should be, and hereby is, DENIED.
This is an employment discrimination case. Plaintiff, who was fifty-three when he filed this suit, worked for Defendant Heinz from the summer of 1966 until April 30, 1992. *810 Before termination, he worked as regional manager of grocery specialty sales. Plaintiff was supposedly let go because of a consolidation of the company. However, he alleges that younger, less experienced and less qualified employees were favorably treated over him. Plaintiff is also a long-term, insulin dependent diabetic. He asserts that employees who were not similarly situated fared better than he did in the consolidation.
After his termination, Plaintiff interviewed with Defendant Ore-Ida on August 19, 1992 for the position of Texas regional grocery sales manager. Three days later, he received a rejection letter stating that another candidate whose qualifications more closely matched the position's requirements had been selected. However, Plaintiff alleges that a younger, less experienced candidate was selected for the position. Also, during the interview the fact of his being a diabetic surfaced, although the parties dispute how the issue came up.
Based on these facts, Plaintiff asserts causes of action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, (ADEA), the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, (ADA), and the Texas Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k. The instant motion exclusively concerns Plaintiff's ADA claim against Ore-Ida. After recapitulating the standards under which a court should consider a summary judgment motion, the Court proceeds to an analysis of the law relating to this case's facts under the summary judgment standard.
The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. Slaughter v. Southern Talc Co., 949 F.2d 167, 170 (5th Cir.1991). The existence of a genuine issue of material fact is determined based on whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986). In other words, "[a] dispute about a material fact is `genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1504 (5th Cir. 1988). At the summary judgment stage, a district court may not weigh the evidence or determine the truth of the matter but should only decide the existence of a genuine issue for trial. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.
The rules allocating the burden of proof guide a court in a summary judgment analysis, Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir.1991), and that allocation depends on the burden of proof that would apply at trial. See Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 150 (5th Cir. 1991). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. Russ v. International Paper Co., 943 F.2d 589, 591 (5th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. Page v. DeLaune, 837 F.2d 233, 239 (5th Cir.1988). When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. Duckett v. City of Cedar Park, 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[1] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).
Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," Rosado v. Deters, 5 F.3d 119, 122 (5th Cir.1993) (quoting Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir.1986)), the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse *811 party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2510-11. The existence of a mere scintilla of evidence will not suffice. Id. at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. FED.R.CIV.P. 56(c); Campbell v. Sonat Offshore Drilling, 979 F.2d 1115, 1119 (5th Cir.1992).
Defendant initially attacks Plaintiff's ADA claim by alleging that he does not have a disability as the Act contemplates. "The ADA provides multiple protections to people with disabilities and ... one of the law's express goals is that it `provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"[2] This comprehensive legislation is broadly divided into five titles, which deal with different aspects of the more general notion of eliminating disability discrimination: Title I concerns employment discrimination, while Title II addresses the services and practices of state and local governments. Title III affects public accommodations, and Title IV concerns telecommunications issues.[3] The fifth title deals with miscellaneous provisions, including, for example, the relationship between the ADA and insurance and the application of the Act to Congress. The issue pertinent to this case falls under Title I's purview. There, the Act prohibits covered entities from discriminating against "a qualified individual with a disability because of the disability ... in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Concerning the initial issue that Defendant raises, the Act provides that
[t]he term "disability" means, with respect to an individual 
(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.
42 U.S.C. § 12102(2). Safely plying this sub-section's apparently placid language becomes more troublesome than an initial glance at the surface might suggest, for Congress has given several agencies purview of imbuing the Act's terms with more explicit meaning. Indeed, one commentator, after recognizing that Congress gave power to promulgate rules and regulations under the ADA, noted that "[s]ome of the ADA's terms have different meanings depending upon which title of the law is in issue, and therefore which agency's rules apply."[4]
That same commentator, though, then immediately stated that such was not the case with the term "disability."[5] Although it may not be true that the various agencies charged with explication of ADA terms could blur by overlapping rules what constitutes a disability, the parties go some distance themselves to muddy the waters. In their war over the meaning of "disability," the parties seem to have besieged particularly the phrase "substantially limits," yet one governmental agency sees the answer to this question clearly. Congress charged the Equal Employment Opportunity Commission (EEOC) with issuing regulations to implement the ADA's Title I. 42 U.S.C. § 12116. Under this charge, the EEOC has not only promulgated regulations, it has also set forth an interpretative guide concerning that title. *812 A part of this suggested interpretation states that "a diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication." 29 C.F.R. Part 1630, Appendix to Part 1630  Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(j). Although this interpretative gloss concerns what it means to "substantially limit," it appears that it also assumes that an insulin-dependent diabetic satisfies the other requisites in 42 U.S.C. § 12102(2)(A) of having a physical impairment and having the limitation affect a major life activity.
Understandably, Ore-Ida invites the Court to disregard the EEOC's interpretation, arguing that the interpretative guidance is not binding and should be rejected as contrary to the ADA's plain language. "[C]ourts are in general agreement that interpretative rules simply state what the administrative agency thinks the statute means, and only `remind' affected parties of existing duties." Jerri's Ceramic Arts, Inc. v. Consumer Product Safety Comm'n, 874 F.2d 205, 207 (4th Cir. 1989). "In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." Id.; accord Public Employees Retirement System v. Betts, 492 U.S. 158, 175, 109 S.Ct. 2854, 2865, 106 L.Ed.2d 134 (1989) ("the interpretive regulation construing § 4(f)(2) [of the ADEA] to include a cost-justification requirement is contrary to the plain language of the statute and is invalid.") Plaintiff counters Defendant's assertion by offering that the EEOC interpretative gloss rests on congressional intent born out in legislative history and also claims that a Supreme Court case, concerning a situation arising under the Rehabilitation Act of 1973, a virtual predecessor of the ADA, is dispositive.
Plaintiff's first objection to Defendant's argument may be dealt with swiftly. If the statutory language at issue, here the word "limits" is not ambiguous, legislative history and congressional intent are inapplicable to the analysis:
Fifth Circuit law is crystal clear that when ... the language of a statute is unambiguous, this Court has no need to and will not defer to extrinsic aids or legislative history. Clear statutory language is dispositive. To paraphrase Justice Holmes' oft-quoted statement, we do not inquire what Congress meant; we only ask what it said.
Guilzon v. Commissioner, 985 F.2d 819, 823-24 n. 11 (5th Cir.1993). Plaintiff's second contention concerns the Supreme Court's Arline decision.
In School Board of Nassau County v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the Court concluded that a person afflicted with tuberculosis may be considered a "handicapped individual" within the meaning of the Rehabilitation Act. In its analysis, the Court considered language virtually identical to the ADA's definition of disability.[6] The Court recognized the significance of Health and Human Services (HHS) regulations promulgated to define "physical impairment" and "major life activities." With these regulations in mind, the Court concluded that Arline had an impairment under the Rehabilitation Act, and then stated that
[t]his impairment was serious enough to require hospitalization, a fact more than sufficient to establish that one or more of her major life activities were substantially limited by her impairment. Thus, Arline's hospitalization for tuberculosis in 1957 suffices to establish that she has a "record of ... impairment" within the meaning of 29 U.S.C. § 706(7)(B)(ii), and is therefore a handicapped individual.
Arline, 480 U.S. at 281, 107 S.Ct. at 1127. On this authority, Plaintiff maintains that the Court in Arline "consulted, endorsed and applied Regulations promulgated by the [HHS] in attempting to interpret and apply the important phrases of `physical impairment' and `major life activities' that are used *813 in the definition of `handicapped individual' under the Rehabilitation Act." (Pl.'s Resp. at 7.) Plaintiff further states that "[n]ot coincidentally, these identical terms are found in the ADA's definition of `disability.'" (Id.)
On consideration though, the Court does not find Arline that helpful to consideration of Ore-Ida's assertion. The Supreme Court's discussion neither involved analysis of HHS regulations glossing "substantially limits," nor did the Court have interpretative guidelines as opposed to regulations having the force of law to consider. Accepting Plaintiff's analogy of the Rehabilitation Act and the ADA, the Court notes that Arline dealt primarily with a different component of the analysis than is pertinent here  the record-of-impairment prong rather than the substantially-limits portion of the test  and that the HHS language that the Supreme Court considered was only vaguely, if at all, comparable to the EEOC's guidelines. Also, as Defendant points out, the Arline defendants "argued ... that whether the plaintiff met the statutory definition of an individual with a handicap was `irrelevant' because Congress did not intend to cover individuals with contagious diseases." (Def. Or-Ida Foods' Reply, at 3.) It was this argument that composed a major portion of the Supreme Court's analysis. The Court does not conclude that Arline has absolutely nothing to say regarding the relationship between the ADA and the Rehabilitation Act or other issues that may be pertinent to this case. The Court is persuaded, however, that the case simply does not address directly the issue, or even an analogous one, of whether the EEOC interpretative guidelines should be given deference in the Court's consideration of Defendant's motion.
This conclusion necessitates direct consideration of Defendant's point; namely, whether the EEOC interpretative gloss is at odds with clear statutory language. Defendant's argument appears to run like this: In order to have a disability under the ADA, one must have a physical or mental impairment that substantially limits one or more major life activity. Yet the EEOC's interpretative guidance states that a diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication. This gloss reads "limits" right out of the statute because an insulin-dependent diabetic who takes insulin could perform major life activities and would therefore not be limited. Because the EEOC gloss requires determination of "disability" regardless of an insulin-dependent diabetic's limitation, it is at odds with the statute. In other words, the EEOC interpretation requires that one not having a limitation be considered as having a disability even though the statutory language clearly requires substantial limitation.
Philosophers could doubtless write volumes on the meaning of "limitation." However, the Court concludes that such prolixity is unnecessary here because the Court understands the EEOC guidelines to allow one who is an insulin-dependent diabetic, without any additional evidence concerning limitation of life activity, to qualify as one having a disability under the ADA. As Defendant argues, to allow such an interpretation would be to allow one having no limitation to satisfy a condition that clearly requires limitation. Thus cast, the EEOC's interpretative guidance quoted above is directly at odds with clear statutory language. Although "limitation" may carry different shades of meaning, it cannot be meaningless, which is what acceptance of the EEOC's interpretation would render it. The Court therefore concludes that the EEOC's gloss should be rejected as contrary to 42 U.S.C. § 12102(2)(A). Plaintiff's condition as an insulin-dependent diabetic, then, does not constitute a per se disability under 42 U.S.C. § 12102(2)(A). In order to carry his summary judgment burden, Plaintiff must come forward with evidence sufficient to demonstrate a genuine issue of material fact on the issue of "substantially limits" in order to survive Defendant's motion on the 42 U.S.C. § 12102(2)(A) alternative under the definition of "disability."
A note on this issue, though: Understandably, one with sufficient medical knowledge of diabetes may view as naive the Court's conclusion that that disease is not a per se *814 disability under the ADA. It might be the case that an insulin-dependent diabetic could always, by the very nature of the disease, raise a fact issue sufficient to overcome summary judgment, which could be viewed as another way of saying that the disease is a per se disability. However, the Court's conclusion does not stem from the nature of the disease, which would involve a medical opinion that the Court is not qualified to make, but rather stems from the actual language of the EEOC's interpretative guidelines, which involves a legal conclusion that the Court is qualified to make. The Court reads the statute as requiring limitation, but reads the EEOC's interpretation as negating that requirement vis-a-vis diabetes. Although this distinction may seem metaphysical, it is an important one to note, lest one misperceive, and understand the Court as deciding facts about the disease that afflicts Plaintiff.
This conclusion does not end the involvement of EEOC regulations in this case, however. In addition to the interpretative guidance, that agency has promulgated rules, much like the HHS in Arline, concerning the meaning of "disability" and its constituent parts. The EEOC definition of one of those constituent elements appears in the Code of Federal Regulations as follows:
(1) The term substantially limits means:
(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
(2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.
29 C.F.R. § 1630.2(j). A "major life activity" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. at (i).
Judged under the pertinent law in the summary judgment context, Ore-Ida's motion is insufficient to warrant the granting of summary judgment in light of Plaintiff's summary judgment evidence. To controvert Defendant's evidence, Plaintiff offers his own affidavit and the affidavit of his doctor, Richard Sachson. Both affidavits tell, for the most part, the same story, but either one would be sufficient, in the Court's view, to demonstrate a genuine issue of material fact on the issue of disability. Plaintiff's disease continues to affect such major life activities as eating and sleeping. Plaintiff's condition requires him to take insulin injections, which give rise to hypoglycemia, an insulin reaction. Plaintiff explains such bouts as follows:
I have awakened in the middle of night in the most advanced state of hypoglycemia prior to unconsciousness. While in this state I was, and I am, only able to muster the physical movement of obtaining and drinking a glass of juice or eating a piece of fruit to alleviate the hypoglycemic episode. During these episodes caring for myself is problematical and I am unable to sleep. I have experienced severe hypoglycemic episodes short of unconsciousness and this is a result, in part, of a tight insulin control of my blood sugar levels, which are considered medically recommended for my condition.
(Aff. Ivan P. Coghlan, at ¶ 5.) Plaintiff also offers evidence of the chronic effect of diabetes on his eyes, which have required operations in order to correct damage caused by the disease. Defendant's motion on the issues arising under 42 U.S.C. § 12102(2)(A) must therefore be denied.
Defendant additionally asserts its entitlement to summary judgment on the two other alternative prongs regarding disability under Section 12102(2), record of impairment under (B) and being regarded as having an impairment under (C). After reviewing the evidence *815 though, the Court has little doubt that Plaintiff demonstrates a genuine issue of material fact concerning his having a record of impairment. The Supreme Court's recognition in Arline that the plaintiff's hospitalization sufficed to establish a record of impairment seems equally sufficient here. Plaintiff's and his doctor's affidavits establish that Plaintiff has been hospitalized more than once as a result of his disease. Defendant also complains that Plaintiff cannot establish that Defendant regarded Plaintiff as having an impairment. However, because of the differences in the parties' stories concerning Plaintiff's interview with Arnold, it is difficult to determine who regarded whom as having what, and the Court understands Plaintiff's evidence as raising a genuine issue on this point. Defendant's motion on the issue of disability must be denied.
Ore-Ida's next contention concerns Plaintiff's job interview with Mike Arnold. There, Arnold made some sort of inquiry concerning Plaintiff's condition, although the parties dispute the words used and the extent of the inquiry. The ADA provides that "[t]he prohibition against discrimination ... shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). Concerning preemployment situations, the Act states that "a covered entity shall not ... make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). The statute contemplates acceptable inquiry, though: "A covered entity may make preemployment inquires into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B). From the state of the record, the Court cannot discern whether Arnold's comments concerned a disability or simply questioned Plaintiff's ability to perform job-related functions. There exists, therefore, a fact issue in this regard. On this score, Ore-Ida's motion must be denied.
SO ORDERED.
NOTES
[1] See FED.R.CIV.P. 56(e).
[2] Robert L. Mullen, The Americans With Disabilities Act: An Introduction for Lawyers and Judges, 29 LAND & WATER L.REV. 175, 177 (1994) (quoting 42 U.S.C. § 12101(b)(1)).
[3] The ADA's Title IV amends the Communications Act, see 47 U.S.C. §§ 225 and 611, and is therefore not codified in USC Title 42.
[4] Mullen, supra note 2, at 181.
[5] Id.
[6] The Court noted that "in 1974 Congress expanded the definition of `handicapped individual' for use in § 504 to read as follows:

`[A]ny person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.' 29 U.S.C. § 706(7)(B)."
Arline, 480 U.S. at 278-9, 107 S.Ct. at 1126.