**Thomas D. SWITZER, Plaintiff,**

v.

**TEXAS COMMERCE BANK, Texas Commerce Bank, National Association, and Texas Commerce Bank, N.A., Defendants.**

No. 3:93–CV–0072–X.

United States District Court, N.D. Texas, Dallas Division.

May 3, 1994.

Hal K. Gillespie and David K. Watsky Gillespie, Rozen & Tanner, P.C., Dallas, for plaintiff.

Sarah R. Saldaña, Teresa S. Valderrama, and Kathryn S. Vaughn, Baker & Botts, L.L.P. Dallas, for defendants.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the court are: Defendants' Motion for Summary Judgment and Brief in Support, filed February 25, 1994; Plaintiff's Response, filed April 11, 1994; and Defendants' Reply, filed April 22, 1994. After carefully considering the motion, briefs, supporting evidentiary submissions, and applicable law, the court determines that no issues of material fact exist with respect to the issues raised in the motion for summary judgment. Therefore, Defendants' Motion for Summary Judgment is GRANTED.

### BACKGROUND

This is a reverse race discrimination case. Plaintiff Thomas D. Switzer ("Switzer") was employed by Defendant Texas Commerce Bank, National Association ("TCB") from January 16, 1989 to April 1, 1992. Switzer was a senior vice president of TCB with the title of Manager, Remittance Bank Division. Switzer is a white male. Switzer was hired by Kevin O'Brien ("O'Brien"), TCB's Manager of Financial Services. O'Brien, a white male, was Switzer's direct supervisor during Switzer's employment at TCB.

Before his employment with TCB, Switzer was a consultant who had performed a study of TCB's remittance banking ("lock-box") operations for the bank. Switzer discovered problems with systems, quality, and profitability in TCB's lock-box operations. TCB hired Switzer to improve its lock-box opera-

tions in Dallas and Houston and to manage the large staff of more than 250 people. TCB markets its lock-box services to corporate customers, whose clients send payments directly to a post office box to be collected by TCB staff every hour, seven days a week. The goal of a lock-box operation is to deposit these payments into the corporate customers' accounts quickly and accurately so the customers have access to their funds as soon as possible. Because many banks provide lock-box services and competition between banks is fierce, a bank must deliver top quality service to obtain and keep its lock-box customers.

During Switzer's tenure with TCB, however, the problems with the lock-box operations persisted and even increased. There were continual complaints about the level of lock-box service by the TCB sales staff in behalf of TCB customers, and complaints directly from TCB customers. Racially insensitive comments made by Switzer (including a presumably facetious comment to his supervisory staff that he wanted them to participate in community activities, whether PTA, hospitals, baseball, or the KKK) also caused problems in the lock-box operations, which had a staff that was more than 70% minority.

Fearing that Switzer was losing all credibility with TCB employees and customers, O'Brien and others repeatedly discussed these problems with Switzer. Finally, in a January 1992 performance appraisal, O'Brien told Switzer that the performance problems were jeopardizing Switzer's career at TCB. When O'Brien did a "walk-through" in February 1992 of the Dallas lock-box operations, he found bins full of unprocessed customer mail, and was told by the department supervisor that the department never met its deadlines. O'Brien concluded that Switzer would never resolve the lock-box operations problems, and notified Switzer on March 11, 1992 that he was being discharged. Switzer was replaced by Russell Boyd ("Boyd"), a black male who was a senior manager at

TCB whose job was being eliminated. Boyd was himself terminated for performance problems nine months after assuming the management of the lock-box operations, and was replaced by LaWana Cole, a white female.

After his termination, Switzer filed a charge of employment discrimination with the Equal Employment Opportunity Commission and the Texas Commission on Human Rights alleging that he was terminated because of his race, in violation of federal and state laws prohibiting discrimination in employment. Switzer filed this action in January 1993. Switzer's First Amended Complaint states a cause of action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff seeks compensatory and punitive damages against his former employer, TCB.[1] TCB has moved for summary judgment, asserting that Switzer was not discharged because of his race, but was discharged because of severe problems with Switzer's job performance. Switzer counters that he has established a *prima facie* case of race discrimination, and that genuine issues of material fact exist which preclude summary judgment.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.,* 949 F.2d 167, 170 (5th Cir. 1991). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law will identify which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The nonmovant is not required to respond to the motion until the movant properly supports his motion

---

1. Plaintiff's Complaint names as Defendants Texas Commerce Bank, Texas Commerce Bank, National Association, and Texas Commerce Bank, N.A. In the Amended Joint Pretrial Order, filed April 28, 1994, the parties stated that TCB's counsel had represented to Switzer's counsel that the proper legal name of TCB is Texas Commerce Bank, National Association. Based on this representation, Switzer's counsel stated that Switzer would dismiss the other two entities as Defendants. The court thus considers this motion to be dispositive as to all Defendants.

with competent evidence. *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir.1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment. Fed.R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling,* 979 F.2d 1115, 1119 (5th Cir.1992).

## DISCUSSION

TCB asserts that Switzer cannot establish a *prima facie* case of race discrimination. TCB also asserts that, even if Switzer could establish a *prima facie* case, TCB has articulated a legitimate, non-discriminatory reason for Switzer's discharge, and Switzer has no evidence that this reason is a pretext for intentional discrimination. TCB concludes that it is entitled to summary judgment on

Switzer's race discrimination claim as a matter of law. Switzer counters that he has indeed established a *prima facie* case of race discrimination and that there is a genuine issue of material fact as to whether the reasons stated by TCB for Switzer's termination are pretextual.

■ The legal standards applicable to Title VII discrimination cases contain shifting burdens of production and proof. First, a plaintiff must establish a *prima facie* case, which gives rise to an inference of discrimination. To do so in a reverse race discrimination case, a plaintiff must show (1) that he belongs to a racial minority within the company; (2) that he was terminated from a position for which he was qualified; and (3) that he was replaced with someone not in his protected class. *Flanagan v. Aaron E. Henry Community Health Serv. Center,* 876 F.2d 1231, 1233 (5th Cir.1989). These are a modification of the so-called "McDonnell Douglas" factors, after *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), which may be modified as necessary to conform to the facts of a particular case. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976).

■ By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Next, the burden falls on the defendant to rebut the presumption by producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *Id.* As the Supreme Court has emphasized, although the burden of production shifts to the defendant, the burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.* The defendant's successfully carrying the burden of production rebuts the *prima facie* case, which at that point drops from the case.[2] *Id.*

2. It is important to note that whether a defendant carries his burden of production involves no credibility assessment, "[f]or the burden-of-pro- duction determination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2748 (em-

The plaintiff then has the opportunity to put on evidence that the defendant's proffered reason was not the true one for the employment decision, but in order to show pretext, the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *Id.* —— U.S. at ——, 113 S.Ct. at 2752 (emphasis in original).

■ Under the standards set forth in *Flanagan*, the court holds that Switzer has failed to establish a *prima facie* case of reverse race discrimination. Although Switzer was terminated from a position for which he was qualified, and was replaced by a black man, Switzer has failed to demonstrate that he belonged to a racial minority within the company. The fact that Switzer's staff (employees reporting to him) was 72% minority does not prove that whites were a minority of TCB's managers.

■ In addition, the court holds that, even if Switzer had established a *prima facie* reverse race discrimination case, TCB has articulated a legitimate, non-discriminatory reason (continual, significant performance problems) for Switzer's discharge. Switzer has failed to demonstrate that the reason given by TCB for his termination was not a pretext for intentional discrimination, so that summary judgment in favor of TCB is appropriate. The summary judgment record is replete with instances of complaints from TCB's customers and from other TCB managers about the performance of Switzer personally as well the lock-box operations. The summary judgment evidence also indicates that Switzer frequently blamed the problems of the lock-box operations on others, refusing to recognize that the problems were caused within his department or to take responsibility for them.

Switzer claims that TCB's reason for his termination was pretextual in part because he had no notice that his job was in jeopardy until the unfavorable performance review in January 1992, less than a month before O'Brien's decision to terminate him. The court finds this argument unpersuasive. The summary judgment evidence indicates that during 1991 Switzer was counseled by his boss as often as three times a day about the deficiencies in the lock-box operations. Switzer conceded in his deposition that O'Brien had discussed customer complaints with him before the January 1992 performance review, and that O'Brien had informed him in 1991 that improvements must be made. That evidence, coupled with the frequent complaints from other TCB managers and, more importantly, from TCB customers, indicates that if Switzer did not know that his job was in jeopardy, he was seriously misleading himself. TCB cannot be held responsible for Switzer's ostrich approach to his own fate.

As for Switzer's claim of racial harassment, the court finds this argument even more incredible. Switzer claims that he was counseled by O'Brien about racial issues twelve times during Switzer's three years at TCB. Yet during that time, Switzer made the KKK comment referred to earlier, and also made a racially insensitive comment in a memo to staff after a systems breakdown. Switzer wrote:

There is a mild sense of panic, despite the superior management skills and smoothness of the supervisors. Do not underestimate this factor. We are employing high school graduates, single parents, the inner city minorities. They work hard, diligently, responsibly and carefully. But when we kick away the security control and certainty of the automated system, it does affect their psyche, their concentration and their ultimate performance.

After this comment, O'Brien received a memo from Thomas Jones, a black staff member of Switzer's, "condemning the comments regarding minorities in the memo as an unnecessary, unjustified, and uncorroborative statement that is totally without merit and with potentially damaging consequences." In his deposition, Switzer did not criticize O'Brien for counseling him about this, but agreed that concerns about racism should be addressed with the employee involved. Switzer testified that TCB was very

phasis in original). In other words, a court is to take the defendant's rebuttal evidence as true.

*Id.*

racially sensitive, and had settled a large lawsuit involving a racist comment by a senior manager. This evidence demonstrates nothing more than that TCB expected its managers to be racially sensitive—an especially important attribute for a manager whose staff was 72% minority. In summary, the court holds that Switzer has not refuted TCB's allegations of severe performance problems, and has produced no evidence demonstrating that TCB's stated reason for his termination was pretextual, or that race discrimination was the real reason.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is GRANTED, and all of Plaintiff's causes of action against Defendants shall be DISMISSED WITH PREJUDICE.

SO ORDERED.